**WHITE, Plaintiff-Appellant v SPIDEL et, Defendants-Appellees.**

Ohio Appeals, 2nd District, Darke County.

No. 602. Decided February 2, 1943.

Baird Broomhall, Troy, and Howard B. Cromer, Piqua, for plaintiff-appellant.

Wilbur D. Spidel, Greenville, and Richard E. Hole, Greenville, for defendants-appellees.

## OPINION

BY THE COURT:

The above entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Darke County, Ohio.

Plaintiff's cause of action was for a commission claimed to be due him from the defendants under an exclusive agency contract executed in writing by the parties.

Issues were joined and the case came to trial before a jury.

At the close of the plaintiff's testimony defendants demurred to the evidence. whereupon the trial court sustained said demurrer, discharged the jury, dismissed plaintiff's petition and entered final judgment.

Thereafter within proper time, plaintiff took the necessary steps through which the case was appealed to our court.

The case is submitted to us on the pleadings, bill of exceptions, opinion of the trial court and briers of counsel.

The exclusive agency contract is in the words and figures following:

"EXCLUSIVE AGENCY CONTRACT
Joe White, 506 Riverside, Piqua, Ohio.
Licensed Real Estate Broker

In consideration of your agreement to use your efforts in finding a purchaser for my property, I hereby grant you the exclusive right for a period of 30 days from date hereof, to sell property known as the Spidel farm, 192 acres. Van Buren Township.

Price $20,000.00 or at any other price, terms or exchange to which I may consent.

If you are successful in finding a purchaser for my property, or if the same is sold or exchanged during the term of your exclusive agency, or is sold within three months after the period of this agency to anyone with whom you have negotiated with respect to a sale during the period of this agency and of whom I have notice, I agree to pay you commission of 3% upon the price at which same may be sold or exchanged.

In event of such sale I will give evidence of marketable title to said property and convey with full covenants of warranty and release of dower.

Farm rented for crop year 1941 and can only be sold subject to tenant's rights for crop year 1941.

Wilbur D. Spidel
J. C. Spidel
Signature of Owner.

Accepted:
Joseph E. White
Jan. 4, 1941."

Plaintiff did not find a purchaser within the thirty days designated in the agency contract, but did find a prospect who submitted a counter proposition, which was taken up with defendants by 'phone. The counter proposition involved a trade-in of a shoe store in Piqua, Ohio, and the balance in cash. The defendants were not interested in the counter proposition and nothing further developed from this prospect, although plaintiff testifies that the prospect had promised to come back and look at the property a second time.

On or about January 14, 1941, the plaintiff, with one of his salesmen, Mr. Ray Kosier, contacted Mr. Jesse B. Buckingham in respect to the sale of the Spidel farm. Mr. Buckingham submitted a proposition of a 40-acre farm in exchange and $14,000.00 in cash. This proposition was likewise transmitted over the 'phone by plaintiff to the defendants. At this time a controversy arose through defendants' claim that Mr. Buckingham was their prospect.

On this same date, January 14, 1941, the Spidels addressed a letter to Mr. Ray Kozier and Mr. Joe White, attempting to revoke the agency contract, claiming that the listing was procured by fraudulent misrepresentations and demanding that the signed listing be returned to them.

Defendants' answer, in addition to a general denial, sets out an affirmative defense, raising several questions which were not reached, due to the fact that the court sustained a demurrer to the evidence presented by plaintiff.

The trial court in his opinion sustaining the demurrer to the evidence, finds supporting testimony for plaintiff's right of recovery except on the construction of the particular paragraph of the agency contract upon which plaintiff was basing his right to recover.

On February 10, 1941, the defendants deeded the premises of 192 acres to Jesse Buckingham, and received as compensation a 40 acre tract and $15,000.00 in cash. This was the same Jesse Buckingham whom plaintiff had previously contacted and within thirty days had given information to the defendants of that fact, by submitting the Buckingham proposition. The deal between the defendant Spidels and Buckingham was consummated within the three months after the thirty day period.

It was the view of the trial court that the defendants did not sell the premises to Buckingham; that an exchange of farms with the difference being paid in cash would not constitute a sale, as that term is used in the contract. The court also pointed out that the exclusive agency contract designated a price of $20,000.00 within the thirty day period, "or any other price, terms or exchange to which I may consent."

There was this additional provision in the exclusive agency contract: "If you are successful in finding a purchaser for my property, or if the same is sold or exchanged during the term of your exclusive agency." It will be kept in mind that the provision of the contract for the sale or exchange merely covered the thirty day period. The three months' period is covered by the following language:

"Or if sold within three months after the period of this agency to anyone with whom you have negotiated with respect to a sale during the period of this agency and of whom I have notice."

The sole question for determination is whether or not the trial court was correct in deciding that the evidence fails to support plaintiff's contention that the defendants sold the premises in question within the three months' period.

In support of the trial court's finding he quotes from **Ohio Jurisprudence, Volume 6, page 218, §45**, which reads as follows:

"The question as to whether a broker under a contract to procure a purchaser ready, willing, and able to buy property can recover his commission in the event that an exchange of the property is made by the owner, instead of a sale, has been answered in the negative in Ohio. This accords with the established rule of agency that an authority to sell property for the principal does not imply or include authority to barter or exchange. The word 'sale' in such a contract of employment is used in the sense of ordinary business parlance; there may be many reasons why the owner of a piece of real estate would place his property in the hands of a broker for sale, from which a money consideration would be derived, when he would not place the same property in the hands of a broker for exchange."

In support of the first paragraph of the above quotation, the writer of the text cites two Ohio decisions, as follows:

**Matusoff v Shalf, 5 Abs 75;**
**Davis v Snow, 25 N. P., N. S., 178.**

It is the plan of the text writer in Ohio Jurisprudence to compile this text from reported cases, and our experience is that generally the text is accurate. However, it is our practice to use Ohio

Jurisprudence as a digest and thereafter carefully examine the cases cited as supporting.

We find that Matusoff v Shalf is not at all supporting, but, on the contrary, holds an adverse view. This does not reflect against the good work of the compilers of Ohio Jurisprudence for the reason that the sketchy report of Matusoff v Shalf would lead to the conclusion that the real estate broker was denied commission on the ground that there was an exchange rather than a sale.

The Matusoff case is not a reported case but is referred to in .5 **Abs, pages 74 and 75,** as pending before the Supreme Court on motion to certify and the reference attempts to state the question involved. We have gone to the trouble to examine the files in the Supreme Court and also in the clerk's office at Dayton, Ohio, in order to have a better understanding of the exact question involved.

We find that the real estate broker was Shalf and he brought action against Matusoff for the 3% commission claimed to be due him by reason of his sale of the $30,000.00 apartment house. He recovered the full amount and the judgment was sustained in the Court of Appeals. The Supreme Court denied the application to certfiy.

The evidence disclosed that there was an exchange of property with a cash difference in the sum of $3,000.00. The petition based its claimed commission on the claimed sale. The answer, after certain admissions, was a general denial. Apparently counsel for defendants raised the question that the evidence disclosed an exchange and not a sale. We find this question discussed in the briefs filed in the Court of Appeals. Counsel for appellee met the question that the transaction was a sale, but in the alternative suggested an amendment to the petition under the claim that plaintiff's evidence disclosed that his commission was to be 3% in the event of an exchange and 4% in the event of a cash sale. The Court of Appeals affirmed the judgment without making any reference to the claimed distinction between an exchange and a sale. The opinion was short and wound up with the general statement that the evidence was sufficient to support the judgment.

It will be noted that this case supports plaintiff in the instant case rather than defendant.

The case of **Davis v Snow, supra,** is also a Montgomery county case, and the decision was by a judge of the Municipal Court. The syllabus reads as follows:

"A contract for the exclusive sale of property, entered into between a broker and the property owner and incorporated in a printed form provided by the broker, will be construed against the broker; and where the contract speaks only of a 'sale' of the property, and the property owner, through his own efforts entirely effects an exchange for other property in which no money passed, the broker is not entitled to a commission."

Under the rule of stare decisis we are not bound to follow the decision of the Municipal Court, but our court is not averse to giving consideration to any well considered case from any authority. We might say that the opinion of the Municipal judge is very thorough and discloses a very exhaustive research on the question involved.

This case is to be distinguished in that the facts are somewhat different from the instant case, although in many respects they are the same. In both instances there was a written exclusive contract but the terms of both were not the. same. In the reported case no reference whatever was made in the written contract to an exchange. It also appears that the plaintiff had no connection whatever with the exchange that was made by the defendant and his grantee. The trade or exchange was made by the defendant during the period of the exclusive contract. The sole question for determination was whether or not under an exclusive contract to sell the real estate broker could recover commission for an exchange or trade made by the owner of the real estate where the broker had not contacted the prospect and had nothing to do with the exchange, and where the evidence disclosed that the exchange was exclusively one property for another and no money passed.

In the instant case there was a reference to an exchange of property, although it is urged that this provision applied exclusively to the thirty day period. but after the expiration of the thirty day period the contract provided for commission on sale only.

Another distinguishing feature was that the plaintiff had contacted the person with whom the deal was subsequently made; still another distinguishing feature was that a large part of the consideration was cash, specifically, $15,000.00 was paid in cash and a farm of forty acres taken in at $5,000.00.

In the instant case the written contract also contained the provision immediately following the thirty day stipulation:

"I agree to pay you a commission of 3% on the price at which same may be sold or exchanged."

It is our judgment, that the terms "exchange" and "sale" are used synonymously throught the contract.

This view is strengthened by the use of the words "such sale" in the next to the last sentence of the contract:

"In the event of **such sale,** I will give evidence of marketable title to said property and convey with full covenants of warranty and release of dower." (Emphasis ours.)

Obviously, the obligation enjoined upon the owners by this provision of the contract was identical whether an "exchange" of

the property or "sale" thereof was made and "such sale" refers to both terms "sold" and "exchanged" as employed in the earliei parts of the contract.

In examining the brief of counsel for appellee. we fina much discussion on questions raised in the answer, and purely defensive. There was some evidence presented on one or two of the defensive matters, but not sufficient to permit the argument that tne defensive claims were established.

Counsel for plaintiff in his examination of witnesses was guilty of the very common and grievous error of anticipating questions set up in defense, and by reason thereof the trial court permitted cross-examination along the same line by counsel for defendant.

Under the record as a whole, it is our conclusion that the trial court was in error in directing a verdict. As to what may develop under the affirmative defenses, we can not predict or determine at this time.

One of the questions to be carefully considered by the trial court is the general rule that written contracts may not be altered or changed by parol. Of course, there are exceptions to this rule and we only refer to it in order that the court and counsel may carefully consider it so as to avoid error in a new trial.

The judgment of the trial court will be reversed and the cause remanded for a new trial. Costs in this court will be adjudged against the appellee.

GEIGER, P. J., BARNES and HORNBECK, JJ., concur.