## BRYAN v. MAYO.

[No. 23,328.   Filed November 19, 1919.]

1. BROKERS.—*Sale of Realty.*—*Parol Contract for Commissions.*—An alleged parol contract employing the defendant to sell real estate for the plaintiff, by the terms of which the defendant was to receive $25,000, in addition to his salary, when $100,000 worth had been sold, was within the statute requiring contracts for the sale of realty to be in writing (§7463 Burns 1914, Acts 1913 p. 638), even though such sum was to be paid the plaintiff for managing the defendant's sales force. p. 551.

2. BROKERS.— *Real Estate.*— *Commissions.*—*Statute.*—*Construction.*—Section 7463 Burns 1914, Acts 1913 p. 638, applies to all contracts by which one person agrees to find or procure a purchaser for the real estate of another in consideration of a commission or reward; and this is true even though the

.result is to be accomplished in conjunction with, or through the efforts of, other agents.    p. 552.

From the Laporte Circuit Court; *James F. Gallaher,* Judge.

Action by Louis A. Bryan against Alphonso C. Mayo. From a judgment for the plaintiff, the defendant appeals. *Reversed.*

*Otto J. Bruce, Darrow & Rowley* and *Hodges & Ridgley,* for appellant.

*Frank E. Osborn, Fred C. Crumpacker* and *Edwin H. Friedrich,* for appellee.

LAIRY, C. J.—Appellee brought this action in the trial court to recover on an oral contract by the terms of which appellant, as alleged, agreed to pay him the sum of $25,000, on certain conditions stipulated therein. There was a verdict and judgment in favor of appellee. On appeal several errors are assigned as cause for reversal, most of which need not be considered. As reasons for a new trial it was stated that the evidence was not sufficient to sustain the verdict, and that the court erred in refusing the request of appellant to instruct the jury, at the close of the evidence, to return a verdict in favor of appellant.

Appellant asserts that the contract on which the verdict is based is invalid because, as shown by the complaint and the evidence, it was a contract for the payment of a sum of money by him as a commission or reward to appellee for the finding or procuring by him of purchasers for real estate belonging to appellant within the meaning of §7463 Burns 1914, Acts 1913 p. 638, which provides that no such contract shall be valid unless the same shall be in writing, signed by the owner of such real estate or his legally appointed and duly qualified representative.

The evidence of appellee shows that he went to Gary,

Indiana, to work for appellant in 1907, while appellant was in Florida with his invalid wife. He commenced working on a salary of $100 a month, and continued to work under that arrangement until August, 1908, when he ceased to work on a salary and commenced to sell appellant's real estate on commission. When appellee commenced selling on commission it was agreed that he should receive $100 for each lot sold by him, and that he should receive one-half of all payments made until his commission was paid. In 1911 his commission was increased by agreement to $125 for each lot sold. In 1912 a written contract was made, in which a commission of $150 for each lot sold was provided. Appellee continued selling appellant's lots under the terms stated until 1913, when he severed his relation with appellant.

Appellee testified that, after he had begun selling real estate on commission, he had a conversation with appellant, in which he told him that he did not think he was making enough money for what he felt he was capable of doing. According to appellee's testimony, appellant said: "I want you to stay with me. There is enough property here to make us all rich and I am well pleased with the prices you are getting, the business you are getting, and you will see when you are through with me that you will be pleased to have remained with me." Appellee then said: "Well, I would like to have some definite understanding as to what I am to get." Appellant said: "Well, I will tell you what I will do. After one hundred thousand dollars' worth of property will have been sold, you will get twenty-five thousand dollars." Appellee said: "And I will continue also with my $100 commission per lot?" Appellant said: "Oh, certainly, certainly, this will be extra." Appellee said: "Well, if I can have the permission to raise the prices as I see fit, I will accept that offer." Appellant said: "Well that is all right, don't raise it too high."

In his testimony in chief appellee stated that the conversation just related occurred in the fall of 1909, at the house of appellant in Gary, while his invalid wife was present, but after it was shown that appellant took his wife to California in the fall of 1908, and that he remained there with her until her death in the spring of 1910, and that he was not in Gary at any time between those dates, appellee again took the witness stand and stated that he was mistaken as to the date, and that the conversation occurred in the fall of 1908. Appellant denies that any such conversation occurred at any time. Appellee testified that he had charge of the selling department, and that appellant told the other agents that appellee was taking care of the selling department, and that they would be under his dictation and direction. He also stated that he hired the agents.

It is the theory of appellee that the verbal contract set out was an agreement on the part of appellee to act as sales manager for appellant in employing other

1. agents, directing their operations, and assisting them in closing their sales, and that it was for this service that appellant agreed to pay him $25,000 when the total sales had reached $100,000. There was nothing stated in the conversation on which appellee relies as establishing the contract which would indicate that appellee was to act for appellant in any other capacity than that of an agent to sell real estate; but, even though the language of the conversation, when considered in the light of the other testimony relating to the character of the services which appellee was rendering at the time the conversation occurred and which he continued to render thereafter, and in the light of other statements made by appellant as shown by the evidence, should be given the construction for which appellant contends, still it would amount to nothing more than an agreement on the part of appellant

to pay appellee $25,000 on the consideration that appellee, through his own efforts as a salesman, and by directing and assisting other agents, would find purchasers and close sales of real estate belonging to appellant amounting to $100,000 in the aggregate.

Appellee cites and relies on the case of *Sherman* v. *Clear View Orchard Co.* (1915), 74 Ore. 240, 145 Pac. 264, as sustaining his theory. Under the facts of that case appellee agreed to organize agencies in different cities, and to dispose of orchard tracts owned by appellant through such agencies, and to receive as compensation five per cent. of the aggregate sales. The contract rested in parol, and the appellant invoked the application of a statute similar to the section of our statute heretofore cited. The court held that the statute did not apply to the contract shown by the evidence. This court has a high regard for the decisions of the courts of last resort in other states; but after a thoughtful consideration of the case cited it is unable to adopt the conclusion reached by the Oregon court as to the applicability of the statute to a case of this kind. The authorities cited to sustain the conclusion do not bear directly on the question involved, and the reasons adduced in support of it do not appear to be very cogent.

No other decisions directly in point have been cited, and the research of the court has failed to disclose any such authorities. There are some cases bearing indirectly on the question which seem to support the conclusion reached in this opinion. *Stout* v. *Humphrey* (1903), 69 N. J. Law 436, 55 Atl. 281; *Dolan* v. *O'Toole* (1900), 129 Cal. 488, 62 Pac. 92.

The statute under consideration is one of a number of statutes to prevent frauds and perjuries; and, like other similar statutes, it was intended to prevent

2. the perpetration of frauds by perjured testimony to support alleged parol contracts in certain

cases. The statute under consideration applies to all contracts by which one person agrees to find or procure a purchaser for the real estate of another in consideration of a commission or reward. The contract disclosed by the evidence is clearly within the provisions of the statute. Before appellee could assert any right to receive payment of the sum stipulated in the contract, even though it were in writing, it would have been incumbent on him to find purchasers and close sales for real estate of appellant amounting in the aggregate to the sum stipulated. This result was to be accomplished through his efforts in conjunction with the efforts of other agents under his dictation and control. The payment of his compensation or reward depended on the attainment of the result stated, and it could not be earned in any other way. The contract falls within the meaning and intent of the statute providing that such contracts shall be invalid if not in writing, and this is true even though it be given the construction most favorable to appellee's contention.

The court should have directed the jury at the conclusion of the evidence to return a verdict in favor of the defendant.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 124 N. E. 873. Sale of real estate: commission, necessity for written contract, 44 L. R. A. 601, 9 L. R. A. (N. S.) 933, 13 Ann. Cas. 977, Ann. Cas. 1915A 1133. See under (1, 2) 9 C. J. 558, 600.