BELLEVILLE LUMBER & SUPPLY COMPANY *v.*
CHAMBERLIN ET AL.

[No. 17,707. Filed February 16, 1949. Rehearing denied
March 25, 1949. Transfer denied January 13, 1950.]

*Jones, Obenchain & Butler,* of South Bend, for appellant.

*Hammerschmidt & Johnson,* of South Bend, for appellees.

ROYSE, P. J.—On February 3, 1944 appellee Elmer J. Chamberlin brought his action against appellant in the St. Joseph Superior Court No. 2. On April 7, 1944 appellant brought its action against both appellees in said court. Subsequently the two actions were consolidated in that court. The venue was changed to the Marshall Circuit Court.

The pleadings necessary to a determination of the questions presented here may be summarized as follows: By paragraph I of its complaint appellant sought to recover from appellees on their promissory note in the sum of $1,100 with interest at the rate of 6% from November 2, 1942, and attorneys' fees. Appellees answered that there was a partial failure of consideration. By its amended second paragraph of complaint appellant sought to recover for certain items the sum of $240.13. Answer of admission and denial under the rules.

Appellee Elmer J. Chamberlin, by paragraph I of his second amended complaint, sought to recover of appellant the sum of $506.83 as bonus allegedly due him under the terms of a contract of employment. By paragraph II of said complaint he sought to recover from appellant the sum of $7,100 for additional services performed in developing appellant's Forest Park Addition in St. Joseph County. It avers said appellee was to determine locations of dwellings; obtain permits; oversee and supervise the construction of all improvements; obtain bids and proposals; let contracts for labor; require materials for the various jobs; direct advertising, and carry out and complete all Federal Housing Administration inspections. It is averred appellant agreed to pay said appellee additional compensation for such services but refused to do so. Appellant answered this paragraph of complaint with an answer in seven paragraphs. Appellant also filed its counterclaim in two paragraphs to paragraph II of said appellee's second amended complaint.

The case was tried to a jury. The jury by its verdict found in favor of appellant on paragraph I in the sum of $1,100 without interest or attorneys' fees. It found for appellant in the sum of $190.13 on its amended paragraph II of the complaint. The trial court directed

the jury to find for appellant on paragraph I of appellee Elmer J. Chamberlin's second amended complaint. It found for said appellee in the sum of $3,500 on paragraph II of his second amended complaint and against appellant on its counterclaim.

Appellant first contends it was entitled to judgment for $352 interest and $225 attorneys' fees on the note for $1,100, which provided for interest at the rate of 6% per annum from November 2, 1942 and attorneys' fees. At the trial of this cause it was stipulated that if appellant be entitled to recover on the note a reasonable fee for the services of its attorneys is $225.00.

Appellant filed its motion asking the trial court to include in its judgment on this paragraph the sum of $1,677.00 for the reason the answers to Interrogatories 5, 6, 7 and 8 show that full consideration for the note of November 2, 1942 was $1,100. The interrogatories and answers are as follows:

"Int. 5:  Was a part of the consideration for the $1,100.00 note of November 2, 1942, $400.00 advanced by the company to Mr. Chamberlin on June 16, 1942?

"Answer: Yes.

"Int. 6:  Was a part of the consideration for said $1,100.00 note of November 2, 1942, the sum of $172.69 paid to him on November 3, 1942, in performance of agreement of settlement made November 2, 1942?

"Answer: Yes.

"Int. 7:  Was a part of the consideration for said $1,100.00 note of November 2, 1942, the sum of $142.52 for items sold by the company to Mr. and Mrs. Chamberlin apart from the construction of their dwelling house on Lot 66 Forest Park Addition?

"Answer: Yes.

"Int. 8: Was a part of the consideration for said $1,100.00 note of November 2, 1942, the sum of $384.79 as final payment by Mr. and Mrs. Chamberlin on account of the construction of said improvements on Lot 66 Forest Park Addition?

"Answer: Yes."

Appellant contends the only affirmative defense to the note was rejected by the jury. That interest at 6% per annum and attorneys' fees are legal incidents of the recovery as stated in the Court's Instruction No. 1. That the stipulation of the parties as to attorneys' fees is binding and conclusive on the parties since the jury, by its verdict, found for appellant on its note. The verdict is contrary to law because it is in conflict with the trial court's Instruction No. 1, which correctly stated the law of the case. This instruction is as follows:

"Your verdict on Paragraph One of the Company's Complaint should be substantially as follows:

" 'We, the jury, find for Belleville Lumber and Supply Company and against Elmer J. Chamberlin and Jesse M. Chamberlin, on the $1,100.00 note of November 2, 1942, referred to in Paragraph One of said Complaint in the amount of $_____'

"It will be necessary for you to insert in such blank space the amount which you determine the company is entitled to recover on said note. In such amount you should include such principal amount as you determine from the evidence to be owing thereon, together with interest at 6% per annum from Nov. 2, 1942, and reasonable attorney's fees."

Both by its answers to the foregoing interrogatories and by its general verdict, the jury found against

appellees on their answer of partial consideration. The trial court in the above quoted instruction correctly told the jury it should include interest on the amount it found to be due at 6% per annum from November 2, 1942 and reasonable attorneys' fees. This became the law of this case. The principal of the note was $1,100. The jury by its verdict found this sum due but denied interest or attorneys' fees. It is well settled that in actions such as this, interest and attorneys' fees are legal incidents of the right to recover. If appellant was entitled to recover on the note it was entitled to interest on the amount due and to attorneys' fees in the sum of $225 in accord with the stipulation of the parties. Therefore, the verdict of the jury is contrary to law, and the motion for a new trial should have been sustained as to this part of the case.

In order to properly understand the questions presented as to the judgment on paragraph II of appellee Elmer J. Chamberlin's second amended complaint, we deem it expedient to summarize the facts as disclosed by the record. (Hereinafter the term appellee shall refer only to said appellee).

In February of 1941 appellee was employed by appellant as a salesman to sell building materials for remodeling jobs. He was to receive a salary of $35 per week and a bonus to be determined by the president of appellant. He was also allowed $5 per week for the expense of his automobile. Appellant owned several subdivisions and was engaged in the building and sale of homes in these subdivisions.

In August, 1941, appellant proposed that appellee take over the supervision of their Forest Park Addition. It suggested appellee pick out a lot in this subdivision and build a home for himself so he could be on the location at all times. Appellee said he could

not obligate himself for a F. H. A. loan of six to seven thousand dollars on his salary, and further he did not believe the F. H. A. would approve such a loan on his salary. Appellant told him he would receive additional compensation for his services. Subsequently, appellant on two occasions wrote the F. H. A. to the effect that appellee's salary, because of his taking over the Forest Park Addition, would be materially increased through the sale of houses in that addition. Pursuant to this arrangement he built a house in this addition and procured a F. H. A. mortgage loan on it. However, he continued to sell building material until January, 1942, when the change was actually made. At about this time his salary was increased from $35 to $50 per week and the $5 auto expense allowance was discontinued. In the Forest Park subdivision he supervised the erection of houses, grading of streets, let contracts, etc., and sold houses. The business of appellant was building houses for sale. Appellee, in the trial of this case, testified as to his duties under this contract in the following language: "I was to take over the job, or the supervision and sell the houses." He said he would not have taken the job to supervise the development of the subdivision upon an agreement to pay him what the job is worth, that amount to be agreed on later, if the offer did not include the payment of a weekly or monthly salary. In the year 1942 he received as salary and bonus $3,650.84. The employment was terminated about September 1, 1943. For his services that year appellee received $2,000. In a letter to appellant's sales manager appellee, after expressing satisfaction with its liberal working policy toward employees, gave his views as to what should be considered in fixing the compensation of employees in the following language:

"Personally I do not believe in commission sales or so-called premium reward for volume sales. After all we should all have our company's interest in mind at all times and let the company place their merit rating on the employee from the standpoint *of all angles of ability of all services performed.*" (Our emphasis).

On October 21, 1943 he wrote a letter to the Lincoln National Life Insurance Company, who held the mortgage on his home, in which he stated his delinquency on the mortgage was caused by the fact he had not been able to obtain a settlement "of commissions due me on my sales." In this letter he stated his sales were in the neighborhood of $150,000.

Upon these facts appellant contends the contract sued upon was entire and that an inseparable part thereof was the finding or procuring by appellee of purchasers for appellant's real estate; that therefore the contract being oral is invalid under § 33-104, Burns' 1949 Replacement. Appellee asserts that upon such facts the question of whether or not the contract was divisible was properly left to the determination of the jury.

■ Section 33-104, *supra,* provides as follows:

"No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one (1) person of a purchaser for the real estate of another, shall be valid unless the same shall be in writing, signed by the owner of such real estate or his legally appointed and duly qualified representative: Provided, That any general reference to such real estate sufficient to identify the same shall be deemed to be a sufficient description thereof."

This section applies to all contracts by which one person agrees to find or procure a purchaser for the

real estate of another in consideration of a commission or reward. *Bryan* v. *Mayo* (1919), 188 Ind. 548, 553, 124 N. E. 873. Webster's International Dictionary gives as synonyms for the word "reward"—compensation, remuneration or pay. By the use of the term "reward," we are of the opinion it was the legislative intent to bring within the above provision of the statute all contracts which contained an agreement for "compensation, remuneration or pay" for such services. Therefore, the provisions of this statute apply to the contract herein unless some portion of it is legally separable and divisible from the agreement to sell real estate. 49 Am. Jur. 848, § 546; 37 C. J. S. 729, § 230.

In considering tests for determining whether or not a contract is divisible, it is stated in 49 Am. Jur. 848, § 547:

"The rule that where part of an oral contract is within the statute of frauds, the whole contract, if it is entire and indivisible, is nonenforceable, but if the contract is divisible, then that part which is not within the statute may be enforced, is generally accepted as the test of enforceability. The difficulty arises in determining when a contract consisting of two or more elements is entire and when severable within the meaning of this rule. This depends very largely on its terms and on the intention of the parties, disclosed by its terms. The question is one of law, but no formula has been devised which furnishes an infallible abstract rule for determining what given contracts are severable and what are entire; the primary criterion is the intention of the parties as determined by a fair construction of the terms and provisions of the contract, the subject matter to which it has reference, and the circumstances of the particular transaction."

We are of the opinion the record in this case leads inescapably to the conclusion that the primary intent

of the parties to the contract made in August, 1941 in issue here, was the sale of the houses in this addition. The work of laying out the addition and building of the houses was merely an incident to accomplish such primary intention. Appellee recognized this in his letter to appellant when he urged that employees be placed on a merit basis *"from the standpoint of ability of all services performed."* It seems clear to us that appellee's statement of his duties that he was to "take over the job, or the supervision, and sell the houses" indicates that this was his construction of the contract. Therefore, we hold the contract is entire and indivisible.

The trial court erred in overruling appellant's motion to instruct the jury to return a verdict in its favor.

In view of the conclusion we have reached, it is unnecessary to consider other questions raised by appellant.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 84 N. E. 2d 60.