KALNA, etc., Plaintiff-Appellees, v. FIALKO, Jr. et,
Defendants-Appellants.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23361.   Decided April 6, 1955.

2

James C. Maher, Pierce J. O'Connor, Cleveland, for plaintiff-appellee.
S. G. Vamos, George Mayer, Cleveland, for defendants-appellants.

## OPINION

By SKEEL, J:

This appeal comes to this court on questions of law from a judgment entered for the plaintiff in the Municipal Court of Parma, Cuyahoga County, Ohio. The plaintiff-appellee seeks by this action to recover a judgment, claiming the rights to a real estate commission by reason of the sale of defendants-appellants' house located at 6403 Forest Avenue in the City of Parma to Mr. and Mrs. Richard M. Blair.

The defendants, desiring to sell their property on Forest Avenue for the reason that they were then engaged in building a new home in Westlake, offered the Forest Avenue Property for sale by advertising in the daily papers. The plaintiff, a real estate broker, noticed the advertisement and, through his employee or salesman, Julius Snyder, contacted the defendants, seeking the right to act for them in the sale of the property. After some negotiation, the parties entered into an exclusive agency agreement granting plaintiff the right to act as defendants' real estate agent for the sale of the Forest Avenue Property for a period of sixty days. The agreement was dated July 23, 1953, and the period of the agency ended September 24, 1953. The plaintiff then advertised the defendants' property a number of times and also conducted an "open house" two or three times. No offer to purchase the property was procured by the plaintiff during the life of the contract.

Either on August 8th or 9th, the plaintiff, through his employee, Mr. Snyder, was conducting an "open house" for the sale of a property on Charles Avenue belonging to Abe Holloway. Richard M. Blair called to investigate the Holloway Property and after an examination of the premises, concluded the price was more than he could pay. At the conclusion of these negotiations, Snyder told Blair of the Fialko Property which he said was of colonial design and could be purchased for $1300 less than the Holloway Property and suggested, after showing a picture of the house, that he go and see it. Mr. Snyder called Mrs. Fialko to say that a Mr. Blair would stop by to see the house. The telephone call is admitted by the defendants but they deny that the name "Blair" was mentioned. In any event, Mr. Blair did not go to see defendants' house at that time, it being his testimony that he had driven by the house

in May of 1953 after seeing defendants' advertisement and did not like some feature of the exterior.

On September 15th, the plaintiff, through Mr. Snyder, renewed his efforts to induce Blair to buy the Charles Avenue Property but when this failed, the defendants' property was again suggested by Mr. Snyder who testified that Blair at that time said "I don't want to see it. * * * I don't like that blue gable out there."

The only notice plaintiff claims to have given the defendants that he was trying to interest a prospective customer by the name of Blair in defendants' property was the telephone call above described and the sole effort in that regard was Snyder's suggestion that he go by and look at it which suggestion or suggestions were met with Blair's refusal to carry out plaintiff's request. The plaintiff did not offer to take Blair to see the property or to in any other way induce the sale to Blair.

After the exclusive agency expired, the defendants refused plaintiff's request to execute an extension of the agreement and Snyder picked up the sale sign which had been placed on the property by the plaintiff. Mr. Snyder testified that he did not mention Blair to the defendants after the one telephone call because Blair was not interested.

When plaintiff's exclusive agency expired, the defendants again advertised their property for sale "by the owner." Blair noticed the advertisement on October 11th and went by the property with Mrs. Blair. Mr. Blair testified as follows:

"When we drove down the street, I said there is that same house. I have seen it about four times. It has a big blue dome on it. It has the listing of Parma Colonial Sixroom Colonial. I have come to see it five times. I said: 'I don't like it.' She said: 'Gee that is a pretty house.' I said: 'Boy, I don't like it at all.' She said: 'Well, it's open, let's go in and look around.'"

This was the first time either Mr. or Mrs. Blair made any examination of defendants' house. They went in and asked the price. Mrs. Fialko asked if they had been sent by a real estate agent to which they answered no, saying they had seen the advertisement in the paper. Thereafter, the Blair's offered $15,300.00 for the house, which offer was accepted and the transaction concluded.

The provision of the exclusive agency upon which plaintiff claims the right to a commission is as follows:

"If you are successful in securing a purchaser for my, our property, or if the same is sold or exchanged during the term of your exclusive agency, or within three months thereafter to any one with whom you have negotiated with respect thereto during the period of this agency, and of whom I, we have notice, I, we agree to pay five per cent * * *"

Two questions are presented: First: is there any evidence that the plaintiff "negotiated" for the sale of defendants' property with "Blair?"; second: did the plaintiff give notice to the defendants sufficient to advise them that Blair was a prospective customer, procured and negotiated with by the plaintiff in the interest of inducing a sale of the property?

The term negotiate is defined in Webster's Dictionary as: "To transact business. To carry on negotiations concerning; to procure, induce or arrange for; by negotiation. To treat with another with a view to

4

coming to terms as for the sale or purchase * * *" Black's Law Dictionary defines "negotiate" as: "To transact business, to treat with another respecting a purchase and sale; * * *" The only acts of the plaintiff, as disclosed by the record when considered in its most favorable light for the plaintiff, falls far short of bringing his efforts to sell the defendants' property to "Blair" within the terms of the exclusive listing contract. In fact, there is no evidence that negotiations were carried on looking to a sale of the property. All the plaintiff did was to ask "Blair" to go by and see the property. When this request was repeated again, while plaintiff was "negotiating" to sell "Blair" another property, he was told frankly and definitely that "Blair" was not interested in defendants' property (which statement was honestly made). The plaintiff then dropped any further effort to interest Blair in defendants' property. In fact, when the exclusive contract came to an end, the plaintiff is frank to admit that he did not consider "Blair" a prospect; nor is there the slightest suggestion that the plaintiff ever considered "Blair" a prospect for defendants' property. There was never an attempt to show "Blair" defendants' home or any other act performed that might be considered as an attempt to interest Blair in defendants' property. The claims of the plaintiff under the undisputed facts do not square with ordinary procedure of real estate salesmen in attempting to make a sale in the ordinary course of a real estate agent's business.

While this finding is dispositive of the case, other questions should be briefly considered.

The question of sufficient notice is directly raised by the defendants. The plaintiff depends entirely upon the one telephone call to Mrs. Fialko that a Mr. Blair would be by to look at the house. This is the only contact the plaintiff had with the defendants concerning Mr. Blair. Admittedly, there were a number of contacts between the parties after August 8th or 9th, which ever date was the one when the telephone call was made, and at no one of such subsequent contacts was Mr. Blair's name ever mentioned. We hold that the plaintiff's case also fails for want of notice.

From the undisputed facts in the case, the plaintiff's efforts were not the procuring cause and did not contribute to the sale of the defendants' house to the Blairs. This conclusion must follow from the failure of plaintiff to "negotiate" for the sale of defendants' property with the Blairs or notify the defendants that such negotiations were in progress.

The court admitted into evidence a piece of paper on which the salesman, Snyder, had made a few notes while talking with Mr. Blair at the Holloway residence. The paper was admitted into evidence as a business record under the provisions of §2317.40 R. C. There is no support for admitting this exhibit into the record. The piece of paper was not a part of any system of the plaintiff in recording events of his business. The paper was carried around in Snyder's wallet for the most part or left in some undescribed place on his desk. It constituted error prejudicial to the rights of the defendants to admit Exhibit No. 3 into evidence on the theory that it was a business record.

For the foregoing reasons, the judgment of the Parma Municipal

Court in favor of the plaintiff is reversed and final judgment entered for the defendants.

Exceptions. Order see journal.

KOVACHY, PJ, HURD, J, concur.