KING, D. B. A. KING SERVICE, APPELLEE, *v.* DEAN ET AL., APPELLANTS.

(No. 1224—Decided July 3, 1968.)

*Mr. John W. Watters*, for appellee.
*Messrs. Moore, Myers & Parsell*, for appellants.

**16**

COLE, J. This is a case originating in the Marion Municipal Court, involving the issue as to whether a real estate broker, plaintiff below, was entitled to a commission on the sale of the defendants' residence property. The case was tried by the court, without a jury, resulting in judgment for the plaintiff in the amount of $1,740. It is before this court on appeal on questions of law by the defendants below.

In brief the facts are these: On March 14, 1966, the defendants gave to the plaintiff an exclusive contract of sale which is as follows:

"KING SERVICE

707 Mt. Vernon Ave.    MARION, OHIO    Phone 382-4467
EXCLUSIVE CONTRACT OF SALE

Marion, Ohio, 3-14  1966

"In consideration of the efforts of your firm to secure a purchaser for the same, I hereby give you for 3 months from this date, the exclusive right of sale of the property described on the reverse side hereof for the sum of THIRTY-TWO THOUSAND—Dollars, payable CASH. I agree to pay the established rate of commission out of the first purchase money on such real estate if the property is sold or exchanged by you, by me, or by anyone else during the continuance of this contract; or if sold or exchanged within three (3) months, thereafter to anyone with whom you had negotiated during the term of this contract, either for the price and terms named or for any other price or terms.

"You are hereby authorized to place a For Sale sign on the property and to remove all other signs from the premises.

Leroy C. Dean

"SCHEDULE OF COMMISSION    Marelyn J. Dean
Residence, commercial,                    Owner
industrial, farm property,
lots & small acreage—6%.    By H. R. King
Business & stocks of
merchandise—10%. Minimum
commission—$100.00."

On the reverse side of the contract appeared certain data pertaining to the residence to be sold.

Subsequently, on or about June 4, 1966, the plaintiff was contacted by people named Ghearing in response to one of the nine newspaper advertisements he had published. An appointment was made, and he showed the Ghearings through the premises. Afterwards, to quote:

" * * * We went outside and Mr. Ghearing walked around, came around the house, came back and we stood in the driveway and I told them it would make a wonderful home for them and they said they had a home to sell. As soon as their home was sold they would be interested.

"They asked me if they might do a little better on the price. Since I had been authorized to take a little bit lower price, I told them probably $30,000.00 would buy it. They said as soon as their home was sold they would be interested."

Again: "They were interested in the home and as soon as theirs was sold they would like to buy it. * * *.

"Did you talk price to them?

"Yes, I quoted $32,000.00. When they asked me if it could be purchased for a lower price, I told them I thought possibly for $30,000.00."

Later: "No, they said that when their home was sold they would be interested right after I told them it could possibly be bought for $30,000.00."

Subsequently, he checked a few times with a Mr. Bush, the realtor employed by Mr. and Mrs. Ghearing (but never contacted them personally again), to determine whether their home had been sold. His exclusive listing terminated June 14, 1966, by its terms. On July 20, 1966, in company with realtor Bush, the Ghearings again visted the Deans' house. At some time later, a contract of sale for $29,000 was signed by the Deans and Ghearings. The property was transferred by deed by the Deans to the Ghearings on August 12, 1966, and the purchase price paid.

The plaintiff then, on discovery of the sale, claimed his commission under the "negotiation" extender clause of his exclusive sale contract.

The appellants alleged several assignments of error,

all directed to the question of whether the plaintiff, as a matter of law under the facts established at the trial, is entitled to recover. The defendants introduced no evidence, so the foregoing testimony as to what transpired is not contradicted.

The plaintiff to recover must predicate his case upon his listing contract. Since he did not sell the property during the term of the exclusive right to sell he is not thereby entitled to a commission.

*Frederick A. Schmidt, Inc.,* v. *Mall,* 50 Ohio App. 177; 8 Ohio Jurisprudence 2d 135; *Lauch* v. *Breitholle,* 101 Ohio App. 13.

However, the contract contained an extender clause which, by special agreement, entitled the plaintiff broker to a commission on a sale concluded by anyone, owner or broker, if the sale (or exchange) took place within three months after June 14, 1966, and if the sale was made to "anyone with whom you [the broker] had negotiated during the term of this contract," *i.e.,* between March 14 and June 14, 1966. Admittedly the sale of August 12, 1966, was within the extended period, so the whole issue narrows down to whether the plaintiff had during the period of March 14 to June 14, 1966, "negotiated" with the Ghearings. If he had, he is entitled to his commission; if he had not, he is not so entitled.

The very narrow question thus presented is: do the acts set forth above in the plaintiff's testimony constitute "negotiation"?

The term "negotiate" is defined in Webster's Third New International Dictionary as follows:

"1. To communicate or confer with another so as to arrive at the settlement of some matter: meet with another so as to arrive through discussion at some kind of agreement or compromise about something: come to terms esp. in state matters by meetings and discussions * * *."

In the first place, it is apparent that the act of negotiating is not a single act but a process. It involves a dialogue or back and forth communication with a purpose; in this case, to sell the real estate involved. Obviously, as used in the agreement, it does not signify the agreement

must be reached. Otherwise the extender clause would have little or no application. The area of action contemplated must be preliminary to agreement but have agreement for its purpose, and implicit in the concept of agreement through discussion is the idea of mutual response, not unilateral action.

If the agent should show the premises, quote the price, and meet with flat rejection, there is no negotiation. There has been a refusal, and the event is terminated. No mutual interest comes into existence. Several of the cases dealing with this clause or very similar clauses in real estate listing contracts are illustrative of this situation.

In *Kalna* v. *Fialko* (Cuyahoga County Court of Appeals), 72 Ohio Law Abs. 1, a realtor with such a contract asked a purchaser to go see a house for sale. The prospect did not go, stating he had looked at the exterior and did not like the place. On a second occasion he was again approached. He said he didn't want to see it; he did not like it. The court holds this to be far short of negotiation.

In *Werner* v. *Hendricks,* 121 Pa. Super. 46, 182 A, 748, a newspaper route was offered for sale through an agent with a similar contract of listing. He called the attention of a certain Conard to the route and the fact it was for sale. He aroused no interest. The court held there was no negotiation, saying:

" * * * Unless the discussion can be brought to the point whereby the interest of the proposed buyer can be aroused or the terms of the sale discussed, it cannot be classed as a negotiation. Negotiation presupposes a mutual interest in the subject matter and merely directing one's attention without further enlisting interest or discussion falls far short of negotiations. The mere offer or solicitation which meets with prompt refusal or rejection having no effect whatever on the subsequent purchase of the route, cannot be regarded as negotiations within the meaning of the contract."

See, also, *Bullis & Thomas* v. *Calvert,* 162 La. 378, 110 So. 621, where an offer to a person only willing to purchase at a figure which was not agreeable to the seller may be treated as, in effect, an offer and rejection.

So negotiation is a process of dialogue or discussion with the purpose of agreement. The advertising of the property in a newspaper and the placing of a sign on the premises are simply to elicit inquiry. They are not negotiation. The showing of the premises and the statement of the price which the seller asks is not negotiation. Up to this point action has been entirely unilateral, and there is not that essential element of mutual interest or response which is inherent in the concept.

The party to whom the property is shown must exhibit at least some tentative interest in purchasing, or there is no common objective to constitute the goal of negotiation. So mutual interest in the subject matter is essential to negotiation.

Negotiation also implies the existence of a period of discussion during which obstacles to the achievement of the common purpose may be resolved. The period may be short or long—but when discussion directed to the adjustment of differences or the resolution begins, then the period of negotiation may be said to have started.

In the present case we have quoted the testimony at length to show exactly what transpired.

1. The Ghearings definitely indicated at least tentative interest in purchase of the property. The plaintiff testified to their interest, saying at one place, "They were interested in the house and as soon as theirs was sold they would like to buy it." We believe the element of mutual interest was established.

2. The period of discussion *to adjust differences* had begun. The Ghearings inquired, after the price of $32,000 had been quoted, whether they might do better on the price. By directing inquiry solely to price they, by implication, indicated at least tentative satisfaction with the location and physical situation of the house. They did not indicate it was for some reason unsatisfactory for their needs. There was no rejection, but in effect a statement that the price was too high. To meet this, the plaintiff, who had authority to transmit lower offers and an indication from the owner he would take less than $32,000, replied that "probably $30,000.00 would buy it." We believe the

period of adjustment of differences had begun and that thereby negotiation had begun.

Does this take the situation from a purely unilateral presentation to one in which there is evidence of negotiation? We conclude it does. The ordinary buyer does not in such case rush to immediate acceptance. Aware that there may be future bargaining for a lower price (as was here indicated by the lower price suggested), the buyer's response is apt to be guarded. An enthusiastic approval might well lead to a weak position. The expression of interest alone carried the matter forward into an open-ended situation, while a flat rejection could have terminated the matter once and for all. A complete lack of response, too, would have not created any mutuality; but where there has been a definite expression of interest in buying coupled with a tentative approach to adjustment of differences as the uncontradicted testimony here indicates, we conclude that the matter has progressed into a stage of negotiation.

The fact that the Ghearings indicated a conditional interest (when they sell their present home) does not change their conclusion. Their home was actively on the market in the hands of an agent. As soon as sold, they would, we must assume, rather quickly need a place to live. Under such circumstances their private decision as to a new residence may well have been made even at that moment, but they were unwilling to make a legal commitment until their house had been disposed of.

We again conclude: when the showing of the property has been followed by an expression of interest in buying and by inquiry as to a reduced price; when the reduced price is indicated as possible by an authorized agent; and when there is an expression of interest in purchase conditioned upon the sale of an existing house then actually on the market; negotiations have started.

We now must determine whether the commencement of the process of negotiation through the eliciting of mutual interest and tentative bargaining as to price is sufficient to involve the operation of the extender clause. The contract does not call for either extended or completed negotiation. It simply pertains to one with whom the plaintiff "had

negotiated," in short, with one with whom this process had commenced irrespective of its duration or its success. The obvious purpose of such a clause is to protect the broker as to sales which are delayed once mutual interest has been invoked and discussion of terms begun but where events and circumstances prevent the actual consummation of such negotiation during the basic listing period. Here the process of negotiation had begun, but the circumstances requiring the sale of the Ghearings' house as a condition precedent to any actual agreement simply delayed the further negotiation to a date beyond the basic listing period. This might never have occurred but, if it did occur during the "extender" period (and it did), the broker in effect reserved the right of resuming the negotiations within that period.

We conclude:

1. Negotiation constitutes a process of discussion in which both or all parties express or exhibit interest in a common objective and attempt to resolve differences with the mutual end of agreement.

2. The exhibition of interest in the common purpose coupled with tentative discussion as to differences begin the process of negotiation.

3. The commencement of negotiation alone, not its extended development or consummation, is contemplated by the term "with whom you had negotiated" in the listing contract here involved.

4. The uncontroverted testimony is sufficient to indicate that the process of negotiation had begun and the period of simple unilateral offering or inquiry had ended.

5. The process of negotiation having commenced, the sale to a party with whom the broker-plaintiff had commenced negotiation falls within the terms of the extender clause of the contract of listing and he is entitled to a commission on the sale.

We find no prejudicial error in any of the particulars assigned.

*Judgment affirmed.*

GUERNSEY, P. J., and YOUNGER, J., concur.