OPINION
Plaintiff-appellant Sherlock Homes ("Sherlock") brings this appeal from the judgment of the Union County Court of Common Pleas granting summary judgment to the defendants.
In 1996, Michael McEnery ("McEnery"), a real estate agent for Sherlock, met with Barbara Wilcox ("Wilcox") to discuss the sale of real estate owned by Wilcox. Wilcox and McEnery signed an exclusive listing contract on February 11, 1997. The terms of this contract stated that it would last for two years and that a commission of 10% would be paid to McEnery if the property was sold or a written offer was submitted to Wilcox during the duration of the listing. After signing the contract, Wilcox suggested that McEnery speak with her neighbor, Ruth Ann Weeks ("Weeks") concerning the sale of her property. On February 17, 1997, McEnery and Weeks entered into an exclusive listing contract with the same terms as that signed by Wilcox.
Due to the extensive amount of work required to market the property, McEnery procured the assistance of John Pardi ("Pardi"), another real estate agent for Sherlock. On January 27, 1998, Pardi and McEnery held a meeting for prospective buyers at the Weeks' home. Numerous developers, including Davidson-Phillips, Inc. ("DPI"), Virginia Homes, Toll Brothers Builders, Creative Development, Centex Homes, Rivers Bend Land Company ("Rivers"), Jeffrey Yocca Builders, and Joshua Builders expressed an interest in purchasing the property. Wilcox and Weeks agreed that they would accept the Rivers offer and they hired a law firm to draft the purchase agreement. On June 25, 1998, Wilcox and Weeks signed the purchase agreement with Rivers. The contract, however, was contingent on rezoning approval, which failed to occur. Thus, Rivers terminated the contract on March 11, 1999. On February 11 and February 17, 1999, respectively, the listing contracts with Wilcox and Weeks expired. However, the parties signed an extension agreement through February 6, 2000.
In November 1999, a purchase agreement was drafted for sale by Wilcox and Weeks to DPI. This contract was contingent upon the agreement of one Miller, a contiguous landowner, to sell his property to DPI. However, this contingency was not met and the contract was terminated. McEnery and Pardi then procured three new prospective offers for Weeks and Wilcox. McEnery was unable to reach Weeks and Wilcox prior to the termination of the listing contract. Wilcox's attorney notified McEnery that the listing contract would not be renewed.
On May 1, 2000, Sherlock filed a complaint to recover its commission based upon the offers submitted to Weeks and Wilcox. Weeks filed an answer and a counterclaim on May 26, 2000. Wilcox filed her answer and counterclaim on May 31, 2000. On June 7 and June 22, 2000, respectively, Sherlock filed its answers to Weeks' and Wilcox's counterclaims. On July 14, 2000, Sherlock filed an amended complaint adding the Ruth Ann Weeks Limited Partnership ("Partnership"), Miriam Wilcox, and the Union County Treasurer as defendants. The amended complaint alleged seven causes of action: 1) breach of contract; 2) interference with contract; 3) anticipatory breach of contract; 4) unjust enrichment; 5) misrepresentation; 6) breach of implied duty to act in good faith; and 7) foreclosure of broker's lien. Also on July 14, 2000, Weeks and Wilcox filed amended answers, amended counterclaims, and third party complaints against McEnery, Pardi, and Brian Donahue ("Donahue"), another real estate agent for Sherlock. Weeks' counterclaim alleged fraud in the inducement, misrepresentation, breach of fiduciary duty, and defamation of title to the real estate. These same allegations were made in the third party complaint.
On August 16, 2000, McEnery, Pardi, and Donahue filed motions for a more definite statement. Sherlock filed a motion to dismiss the counterclaims on August 21, 2000. On that same day, McEnery, Pardi, and Donahue filed motions to dismiss the third party complaints. On September 6, 2000, Wilcox moved to file an amended answer, amended counterclaim, and a third party complaint out of rule. On September 14, 2000, the trial court held a hearing on all the pending motions. The trial court made the following rulings. The motion for a more definite statement in the third party complaint, Sherlock's motion to dismiss Weeks' counterclaim, and Wilcox's motion to file out of rule were all overruled.
The motion of the third party defendant's to dismiss Wilcox's third party complaint and the motion to dismiss all third party complaints and counterclaims filed after July 31, 2000, were granted.
On October 30, 2000, Weeks filed a motion for summary judgment on Sherlock's complaint. On October 31, 2000, Weeks filed a motion for default judgment on her counterclaim and her third party complaint. Sherlock filed its motion for summary judgment on its complaint and the counterclaims on October 31, 2000. The third party defendants also filed for summary judgment on this day. On November 1, 2000, Wilcox filed a motion for summary judgment on Sherlock's complaint. On November 28, 2000, the trial court entered judgment granting summary judgment on the amended complaint to the defendants, granting summary judgment on the counterclaims to Sherlock, and granting summary judgment on the third party complaint to the third party defendants. It is from this judgment that Sherlock appeals.
Sherlock raises the following assignments of error.
The trial court apparently considered only the pleadings and gave nodeference to the depositions, affidavits, exhibits and other evidencecontained in the record. Further, the trial court did not demonstrateupon what facts it relied in applying the law to the facts.
 The trial court failed to recognize that the listing contractdetermines the broker's right to a commission.
 The trial court failed to follow the binding precedent of the SupremeCourt of Ohio in Carey v. Conn that an executed contract is a waiver ofthe broker's duty to prove that prospective purchasers were "ready,willing and able."
 The trial court failed to follow the binding precedent of the thirddistrict appellate court in Smith v. Barry and incorrectly determinedthat a contract must be enforceable in order for the broker to collectits commission.
 The trial court misconstrued the meaning of "ready, willing and able"as relating to something other than the financial ability of theprospective purchaser(s).
 The trial court failed to address the uncontested count pleaded bySherlock as to the breach of the implied duty of good faith implicit inthe listing agreement.
 The trial court failed to address the uncontested count pleaded bySherlock as to the validity, enforcement and marshaling of the broker'sliens.
Wilcox then raises an assignment of error on cross-appeal.
The trial court erred in granting summary judgment dismissing Wilcox'scounterclaim against Sherlock for frivolous conduct.
All of the assignments of error allege that the trial court erred in granting summary judgment to the various defendants. When reviewing the ruling on a motion for summary judgment, an appellate court reviews the judgment independently and does not defer to the trial court. MidwestSpecialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6,536 N.E.2d 411. Civ.R. 56(C) sets forth the standard for granting summary judgment. Summary judgment is appropriate when the following have been established: 1) that there is no genuine issue as to any material fact; 2) that the moving party is entitled to judgment as a matter of law; and 3) that reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.Bostic v. Connor (1988), 37 Ohio St.3d 144, 524 N.E.2d 881.
The circumstances upon which a commission is to be paid are set forth in the listing agreement. King d.b.a King Service v. Dean (1968),15 Ohio App.2d 15, 238 N.E.2d 828. Where "the parties following negotiations make mutual promises which thereafter are integrated into an unambiguous contract duly executed by them, courts will not give the contract a construction other than that which the plain language of the contract provides." Aultman Hosp. Assn. v. Community Mut. Ins. (1989),46 Ohio St.3d 51, 55, 544 N.E.2d 920, 924. Here, the listing contract states in pertinent part
 2A. Owner hereby agrees to pay the Broker a fee of 10% of the selling price of said property, if the property is 1) sold or exchanged or 2) an acceptable written offer is submitted to the Owner signed by a ready, willing and able purchaser during the term of this listing.
 There is no dispute that the property was never sold or exchanged. Thus, the sole dispute is whether an acceptable written offer signed by a ready, willing and able purchaser was submitted to Wilcox and Weeks.
This court has previously addressed the question of whether a broker has procured a ready, willing and able purchaser for real estate.
 If a broker procures a buyer who is ready, willing and able to consummate the real estate transaction on seller's specified terms, and seller refuses to let the purchaser sign the sales contract, seller is bound to pay the broker's commission. . . . The same is true if seller breaches the sales contract. . . . However, if a contract procured by the broker is unenforceable, the broker is not entitled to a commission.
Lentz v. Schnippel (1991), 71 Ohio App.3d 206, 211-12, 593 N.E.2d 341,344 (citations omitted). Here, Sherlock claims that it brought several ready, willing and able buyers to the seller. The first potential buyer was in the form of the Rivers contract. In this instance, a sales contract was signed. However, this contract was contingent upon the acquisition of the Miller property. When the Miller sale did not occur, Rivers terminated the contracts with Wilcox and Weeks. Thus, the contract was no longer enforceable.
The remaining offers were never accepted by either Wilcox or Weeks. Sherlock next sent Wilcox and Weeks the DPI offer. This offer met the price requirements of Weeks and Wilcox, however, it contained a contingency clause permitting DPI to terminate the contract if the voters did not approve the zoning change. The contract was also contingent upon the acquisition of the Miller property. Neither of these contingencies was met. DPI later submitted another offer without the contingency that Miller sells his land to DPI.[1] However, the contract still provided that DPI could terminate the contract upon the failure of the zoning referendum. Given these facts, no enforceable contract can be found.
Another offer submitted to Weeks and Wilcox was that of Ebner Real Estate ("Ebner"). This offer had numerous blank spaces in the offer to be filled in at a later time. Additionally, the offer was subject to termination by the buyer until the zoning was changed or if the terms placed in the blanks were unsatisfactory to Ebner. Given that the zoning was never changed, no enforceable contract existed.
Sherlock also claims that an offer was submitted by the Fuzzy Zoeller organization. However, this was merely a letter of intent, which contained the following limitation.
 This letter describes the general terms and conditions under which Buyer would purchase the Property. This letter is for discussion purposes only and must not be understood as a commitment or an offer for a commitment, notwithstanding anything to the contrary set forth herein.
 By the terms of the letter itself, it is not an offer, so need not be considered as such.
Since the broker failed to produce any offer that would have resulted in an enforceable contract against the prospective buyers, the broker is not entitled to receive a commission. To hold otherwise would permit the broker to force the owners of the real estate to sell the property under terms they do not desire. Sherlock's assignments of error are overruled.
Sherlock also claims that the trial court erred by failing to find the broker's liens to be valid. These liens were filed to secure the commission Sherlock claimed was owed to it. Since no commission was owed, there is no basis for the liens. Thus Sherlock is not entitled to recover on the liens and they are void. This assignment of error is overruled.
On cross-appeal, Wilcox claims that the trial court erred in dismissing her counterclaim for frivolous conduct. Frivolous conduct is defined as follows:
 [C]onduct of a party to a civil action or of his counsel of record that satisfies either of the following:
 (a) It obviously serves merely to harass or maliciously injure another party to the civil action;
 (b) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.
R.C. 2323.51(A). Here, Sherlock's claim was based upon a belief that the terms of the contract could be interpreted as requiring a commission for the brokers. There is some case law to support this contention. Thus, the claim cannot be said to be either wholly unwarranted or filed for the sole purpose of harassing Weeks and Wilcox. The trial court did not err in finding for Sherlock on the claim of frivolous conduct. The assignment of error raised by the cross-appeal is overruled.
The judgment of the Court of Common Pleas of Union County is affirmed.
Judgment Affirmed.
 WALTERS, P.J. and SHAW, J., concur.
[1] The "backup agreement" submitted by DPI was not accepted by Weeks and Wilcox and contained language that Weeks and Wilcox would be liable for attorney fees for the zoning litigation.