VINCENT *v.* WEBER.
VINCENT *v.* CRAWFORD.

[Cite as Vincent v. Weber, 13 Ohio Misc. 280.]

(Nos. CV 2449 and CV 2450—Decided Aug. 31 1965.)

Vandalia Muncipal Court.

*Mr. Edward M. Taylor,* for plaintiff.
*Mr. Robert C. Way* and *Mr. Ralph Hanagham,* for defendants.

BRENTON, J. By agreement of the parties and counsel these cases were consolidated and tried to the court, a jury having been waived.

In each case plaintiff seeks recovery of a real estate commission by virtue of the terms of written listing agreements as executed by and between the several parties.

On May 15, 1962, the Webers owned and occupied the property on Gipsy Drive and on said date they listed same with plaintiff thereby employing plaintiff to procure a purchaser for same for a price of $14,900.00 at a commission of 6%, or if exchange 1% less on the even exchange portion. Plaintiff was given exclusive right to sell through August 15, 1962, and the Webers agreed to pay the commission if Webers sold or exchanged during the exclusive listing or sold within ninety days after the expiration of the listing to anyone with whom plaintiff had negotiated with respect to a sale during the listing period and of whom Webers had notice or knowledge. Thereafter plain-

tiff placed the usual realtor's For Sale sign in front of said property. On or about July 2, 1962, the Crawfords owned and occupied property on Division Street and on said date Mr. Crawford observed said sign and called plaintiff. There conversation resulted in an immediate personal meeting and the listing of the Division Street property under the same terms and conditions as the listing with the Webers except the selling price was $18,950.00, the commission 6% on first $10,000.00 and 4% on the balance and period of exclusive listing was July 2, 1962, through October 2, 1962.

The evidence presented further shows by a preponderance that plaintiff during all the times material was a duly licensed real estate broker as required by law; that the Crawfords went through the Gipsy property once before they listed their Division Street property; that after the listing plaintiff showed the Gipsy property to the Crawfords and thereafter on July 18, 1965, plaintiff obtained a written offer from the Crawfords to trade for the Gipsy property which offer was delivered to the Webers on said date and the Webers refused to read or discuss the same, or view the Division Street property at plaintiff's invitation; that thereafter the testimony was to the effect that plaintiff endeavored by telephone on one or possibly two occasions, the times thereof uncertain, to interest the Webers in viewing the Division Street property and the response of the Webers was that they were not interested at that time; that the only other activity of the plaintiff pursuant to his employment was to show the Gipsy Street property to two couples and to take his salesmen through the Division Street property and show it to one couple, the dates thereof being totally absent from the testimony; that after the Webers advised plaintiff they were not interested, no further efforts of any kind were made by plaintiff pursuant to his employment contracts; that on or about the 8th or 9th of October, 1962, the Crawfords stopped at the Webers and engaged Webers in a conversation about their properties and in a few days the Webers viewed the Division Street property resulting in the Crawfords

and the Webers agreeing to exchange property which said agreement was reduced to writing on October 13, 1962, through the offices of the Glen View Realty Co., the Webers and Crawfords having employed said company for said purpose and to handle the closing of the transaction; that in said agreement the Webers offered to pay $18,000.00 for the Division Street property and to pay the same by trading their Gipsy property for $14,175.00 and cash in the sum of $3,824.00 which offer was accepted by the Crawfords, the Webers and the Crawfords each agreed to pay the Glen View Realty Co. $100.00; that on November 1, 1962, the Crawfords conveyed the Division Street property to the Webers and the Webers conveyed the Gipsy Street property to the Crawfords, the documentary stamps on the deeds of conveyance showing the monetary consideration for each property exactly as set forth in the offer and acceptance executed by the Crawfords and the Webers; that many months thereafter plaintiff discovered that the Webers were then occupying what to plaintiff's knowledge had been the Crawford property and that the Crawfords were occupying what to plaintiff's knowledge had been the Weber property, which said discovery led to these law suits.

Plaintiff predicates his claim for commissions on the ground that he was the procuring cause of the exchange between the several defendants, which the defendants deny. The defendants also claim that their respective contracts contemplate a commission after the exclusive listing period only if the property is sold, that there was a dual agency to which the Webers had not assented, and they strongly urge that plaintiff abandoned his contracts after failing at the initial stages to interest the Webers in the Crawford property.

A study of the cases and digests causes the court to conclude with respect to the defense that the properties were exchanged and not sold outright that the same is not well taken. In each contract the owners agree to pay a certain per cent as commission if sold and a different per cent if exchanged. In each exclusive listing sentence only the word "sell" is used. Then in the succeeding sentence

the words "sold or exchanged" are used for the period during the exclusive listing and in the same sentence only the words "sold" and "sale" are used for the ninety days after the listing period. It is therefore the court's considered opinion that the terms "exchange", "sale", and "sell" and "sold" are used synonymously throughout the contracts. *White* v. *Spidel*, 38 Ohio Law Abs. 481.

With respect to the alleged defense of dual agency it is clear that the Crawfords employed plaintiff to go to the Webers and endeavor to negotiate for an exchange. It further appears that the Webers had knowledge of plaintiff's employment by the Crawfords inasmuch as the listing salesman for each called upon the Webers and in their attempt to present the Crawford offer explained that a commission would be due from each employer. The Webers did not object to the double employment and about all plaintiff got out of Webers was "I don't want that junk" when plaintiff endeavored to get Webers to read the Crawford proposal. Thus it is the Court's opinion that such defense will not defeat a recovery in either case.

The court now considers what it believes to be the real issue in these cases. Was the plaintiff the "procuring cause" of the exchange between the defendants?

All courts generally agree that the phrase "procuring cause" means that cause which commences a series of events without break in their continuity which results in the accomplishment of the principal object of the employment—*i. e.,* the procurement of a purchaser, ready, willing and able to buy the property on the terms and conditions imposed by the principal.

From a great deal of conflicting and often confusing evidence some definite facts may be sifted therefrom: (1) The Webers first employed plaintiff to procure a purchaser for the Gipsy Street property at a specified price and a "For Sale" sign was posted on the property (note: the sign did not include exchange). (2) The Crawfords seeing the sign were prompted to call plaintiff about the Gipsy property which immediately resulted in plaintiff obtaining identical employment from the Crawfords for Division

Street property except as to the specified price and commission percentages. (3) The Crawfords saw and were shown the Division Street property and expressed a desire to trade and thereupon a written offer was executed by the Crawfords offering to exchange their property at the specified prices, plaintiff saying to the Crawfords he would cut his commission by $300.00 on the Gipsy property. (4) Plaintiff did call upon the Webers but could not induce the Webers to go view the Division Street property nor could he induce any negotiations with respect thereto, all of which occurred on or about July 18, 1962. (5) It is practically undisputed that plaintiff did nothing whatsoever pursuant to his employment contracts after July 18, 1962. (6) No sale or exchange was ever made to anyone for the asking price of each seller. (7) Plaintiff never entered into negotiations, on behalf of any prospect with any of the defendants for sale or exchange at a lower figure. (8) Plaintiff never brought the parties together for a discussion of the transactions. (9) It does not affirmatively appear that plaintiff made any contact in person or by telephone with any of the defendants after a day or so following the date of July 18, 1962. (10) After the expiration of the exclusive listing periods the Crawfords contacted the Webers and the defendants were thus brought together resulting in an exchange of the properties based on $18,000.-00 for Crawfords and $14,175.00 for Webers and they employed another broker to assist them in concluding the transactions.

It is obvious that at the time the Webers listed with plaintiff that an exchange of properties was not under consideration. Plaintiff was employed to procure a purchaser. The subject of exchange was not introduced until the Crawfords authorized plaintiff to take an offer to the Webers for an exchange at the listing prices at which time, in good faith, the Webers were not interested. In each case here under consideration plaintiff was employed to find or procure a purchaser which imposed a duty upon the plaintiff to find a person ready, willing, and able at the time to take the property at the price and upon the terms stipulat-

ed. On behalf of the Webers plaintiff found a person willing to exchange properties at the specified prices but Webers were not interested. On behalf of the Crawfords the plaintiff found no person ready, willing and able to purchase or exchange.

Heretofore in this decision the court has made a pronouncement as to the use of the words "sold" "sell" "sale" and "exchange" in the listing contracts and at this juncture clarifies the same by holding that the parties had in mind that "if an exchange," then commissions would be due, but in neither case was plaintiff by the terms of the contracts employed to specifically find or procure an exchange customer.

In the absence of a special contract to the contrary, a broker must be the procuring cause of a sale or transaction in order to be entitled to commissions thereon. The broker's efforts need not be the sole cause, but in the absence of special circumstances, they must be the predominating cause.

Having heretofore defined "procuring cause," the court now recognizes that negotiations with the customer or prospect need not be uninterrupted so long as the continuity of the broker's agency in bringing the transaction to a conclusion can be established. But if the negotiations are broken off and the broker thereafter abandons his efforts, or there is a substantial break in negotiations and the transaction is subsequently concluded by the principal without the aid of the broker, he may be denied any commissions.

The court observes that it is difficult, if not impossible, to reconcile the expressions of the courts in the various cases involving the commissions of real estate brokers, and it would be a profitless task to review even a limited number.

Generally, a broker is not entitled to commissions on a sale or other transaction consummated after he has abandoned his agency contract.

If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment

entirely, or if, after procuring a person who proves to be unwilling to accept the terms of his principal, he ceases to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, he will not be entitled to a commission if his employer subsequently renews negotiations with the same person, either directly or through the medium of another agent, and thus effects a sale without further effort on the part of the broker first employed. 12 Am. Jur. 2nd, page 963, Sec. 223; 4 Ruling Case Law, 317, Sec. 55; approved and followed in *Hunter* v. *Cron,* 102 Ohio App. 571.

The mere fact that a broker shows property to a possible purchaser does not in and of itself entitle the broker to a commission when such prospective purchaser becomes the actual purchaser at some subsequent time in circumstances uninfluenced by the broker. *Bauman* v. *Worley,* 166 Ohio St. 471; *Mars* v. *Miclan,* 168 Ohio St. 144.

Specifically, plaintiff and his agents, did not produce a buyer ready, willing and able to purchase either property upon the terms specified. The most that may be said is that plaintiff's agents produced a prospect ready, willing, and able to exchange for the Weber property. But they failed to interest the Webers. In fact, in this court's judgment, failed to negotiate in any manner with any of the parties, and made no contact with the Webers or the Crawfords after about the date of July 18, 1962. It is obvious that plaintiff did not consider the Webers a prospect for an exchange and did nothing to make them such a prospect. Plaintiff sat back and did nothing whatsoever and after the expiration of over two years by a coincidence discovered that an exchange had been consummated.

Without going into detail suffice it to say that the activities of the plaintiff under the undisputed facts do not square with ordinary procedure of real estate salesmen in attempting to make a sale in the ordinary course of a real estate agent's business. It therefore affirmatively appears that plaintiff abandoned his contracts with the defendants on or about July 18, 1962, and that his activities and accomplishments did not rise to such a level that it can rea-

sonably and fairly be said that plaintiff was the "procuring cause" of the exchange.

Plaintiff real estate broker must establish that he is the primary proximate, and procuring cause, and it is not enough that he may have planted the seed from which the harvest was reaped.

In accordance with the foregoing plaintiff may not recover from the defendants and judgment must be in favor of the defendants and against the plaintiff in each case.

*Judgments for defendants.*