ROBERT FRASH *v.* RONALD G. EISENHOWER d/b/a LAKEWOOD REALTY

[No. 2-676A241. Filed June 15, 1978. Rehearing denied July 31, 1978.
Transfer denied October 13, 1978.]

*Jack G. Hittle, Church, Roberts & Beerbower*, of Noblesville, for appellant.

*David M. Adams, Castor, Richards & Adams*, of Noblesville, for appellee.

WHITE, J. — Robert Frash (Frash) appeals from a judgment awarding Ronald G. Eisenhower d/b/a Lakewood Realty (Lakewood) $5,000.00 as a commission for services rendered in bringing together Frash and Phil Jones (Jones), the ultimate purchaser of Frash's property.

We reverse.

The facts upon which the trial court's judgment is based are established by admissions made in Frash's answer to Lakewood's complaint and testimony elicited in plaintiff's case-in-chief.

Frash did not present any evidence. Lakewood's evidence is that Frash contacted Jim Grady, one of Lakewood's agents, concerning the sale of property owned by Frash, property that he had in fact purchased through Grady. Frash did not, and would not, sign any listing agreement, but did agree orally that if Grady found a purchaser Frash would pay a commission of six percent. Grady eventually found a prospective purchaser, Jones. Grady and Jones together formulated the terms of a proposition to submit to Frash, including a reservation that the offer was contingent upon Jones' ability to obtain financing. Jones then typed those terms in the blank spaces of a standard proposition form used by Lakewood. Jones gave the proposition to Grady to submit to Frash and also grave Grady as an earnest money deposit a check in the amount of Ten Thousand Dollars ($10,000.00). Frash accepted the proposition as submitted and indicated his acceptance by filling in the blanks and signing the printed acceptance form on the back of Lakewood's standard proposition form:

> "As the owner of the property described herein I hereby accept this proposition this II day of April 1974 and I agree to pay Lakewood realty Jim Grady Agent Real Estate Broker the sum of Five thousand dollars ($5,000.00) Dollars commission for services rendered in this transaction."

The underlined portions of the above acceptance represent the blanks that were filled. Where and how the acceptance was completed is not

shown in the evidence, but Grady did testify that he agreed to the $5,000 commission rather than the six percent commission to facilitate the sale (i.e., increase the money Frash would retain) and that Frash signed it in his presence.

Several days later Jones advised Grady that he was unable to obtain financing for the purchase and would have to withdraw his offer. Grady, without prior consultation with or approval by Frash, returned the earnest money deposit. He subsequently advised Frash that the deal had fallen through, and unsuccessfully resumed his search for a purchaser. He had no further contact with Jones. The evidence does not show that Grady or any other agent of Lakewood investigated Jones' statement denying his ability to obtain financing, or attempted to assist Jones in obtaining financing, or attempted to renegotiate the terms of the sale.

At some unspecified later date, according to an allegation of Lakewood's complaint admitted in Frash's answer, Frash transferred his interest in the property to Jones. There is no evidence nor admission which provides any other facts concerning that transaction.[1] The theory of Lakewood's complaint, and apparently the basis of the court's decision, is that the commission specified in Frash's acceptance of Jones' original proposition is due because Lakewood was responsible for getting Frash and Jones together. Under the evidence we cannot agree.

Since 1901 Indiana has had a statute rendering oral contracts for real estate sales commissions non-enforceable. As amended in 1913 that statute, now Ind. Ann. Stat. § 32-2-2-1 (Burns Code Ed., 1973), provides:

"No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one [1] person of a purchaser for the real estate of another, shall be valid unless the same shall be in writing, signed by the owner of such real estate or his legally appointed and duly qualified representative: Provided, That any general reference to such real estate sufficient to identify the same shall be deemed to be a suffi-

---

1. The record contains interrogatories submitted by Lakewood and Frash's answers thereto. They were not, however, introduced into evidence and so cannot be considered by either the trial court or this court.

cient description thereof. [Acts 1901, ch. 67, § 1, p. 104; 1913, ch. 219, § 1, p. 638.]"

The commission contract need not be written in advance; it can, as in the case at bar, be included as part of the landowner's acceptance of the prospective purchaser's proposition. *Hatfield v. Thurston* (1928), 87 Ind.App. 541, 161 N.E. 568. However, the contract is not enforceable unless the sale is consummated in accord with the terms of the written contract; oral modifications are not enforceable. Thus, in *Ward v. Potts* (1950), 228 Ind. 228, 91 N.E.2d 643, a realtor who had entered into a non-exclusive listing contract to sell a 160 acre tract of land for $32,800 and who found a buyer who did purchase the land for $31,000 was not entitled to the 3% commission specified in the listing contract. *See also: Barney v. Yazoo Delta Land Co.* (1913), 179 Ind. 337, 101 N.E. 96; *Bryan v. Mayo* (1919), 188 Ind. 548, 124 N.E. 873.

It is Frash's position that the commission contract was and is conditioned upon consummation of the sale in accord with the terms of the proposition of which it is part; that it is neither a general contract to pay a commission on the sale of the land to any person other than Jones procured by Lakewood nor a contract to pay a commission upon the sale of land to Jones under any other terms; that when the sale described in the proposition was aborted, the commission contract was voided.

We agree with Frash. There is no written contract promising Lakewood a commission for seeking a purchaser, or for introducing Frash to a person who might be interested in purchasing the property, or even for finding a willing purchaser. The only written, and thus the only enforceable, contract is the one wherein Frash both accepted "*this* proposition" and agreed to pay a "commission for services rendered in *this* transaction." (Both emphasis added.) Since the commission contract was drafted by, and was the standard form used by, Lakewood, any ambiguity in that contract must be resolved in Frash's favor. *McMahan Const. Co. v. Wegehoft Bros., Inc.* (1976), 170 Ind.App. 558, 354 N.E.2d 278, 282. Thus, if the commission was intended to be payable on the basis of any transaction other than "this transaction" then Lakewood, the drafter of the instrument, must suffer the damage resulting from the failure of the contract to express that intent.

This is not to say that in all instances in which such a contract is used the seller may subsequently negotiate in person with a prospective buyer found by a realtor and thereby avoid payment of a commission. As was held in *Hatfield v. Thurston* (1928), 87 Ind.App. 541, 161 N.E. 568, strongly relied on by Lakewood, a seller of real estate cannot use the statute to effect a fraud on the realtor. But the *Hatfield* situation is not present in the case at bar. There, as here, the realtor was working under an oral contract that was reduced to writing in the seller's acceptance of the purchaser's proposition. But when the purchaser in *Hatfield* insisted on changing the terms of the proposition the seller cancelled the scheduled closing, retained the earnest money, told the realtor to stay out of the matter, and personally negotiated a sale with the purchaser two days after the scheduled closing date. Here it was Lakewood who cancelled the sale and returned the earnest money without prior consultation with Frash, and it was Lakewood who abandoned Jones as a prospective purchaser.

Lakewood had the burden of proving either that Frash sold the property to Jones under the term specified in the written proposition which was part of the written commission contract, or that Frash committed fraud by preventing Lakewood from negotiating mutually satisfactory terms with Jones. There is no evidence that directly establishes or inferentially supports the finding of either fact. That the sale was finally consummated with someone who was first approached by a realtor is not in itself sufficient to entitle the realtor to a commission. *See, Conley v. Brummit* (1931), 92 Ind.App. 620, 176 N.E. 880, wherein it was held that absent a showing of connivance or collusion a realtor who had a 30-day exclusive option to sell property was not entitled to a commission when a purchaser with whom the realtor had unsuccessfully negotiated procured the property through condemnation proceedings after the realtor's exclusive option had expired. *See also Vincent v. Weber* (1965), 13 Ohio Misc. 280, 232 N.E.2d 671; *Miller v. Jones* (1964), 54 Tenn. App. 31, 387 S.W.2d 627; 12 Am.Jur.2d, "Brokers", §§223, 225; 27 A.L.R. 2d pp. 1403-1405.

The judgment is reversed and this cause is remanded with instructions to enter judgment for the defendant.

Staton, P.J., participating by designation concurs.

Buchanan, C.J., concurs in result.

NOTE—Reported at 376 N.E.2d 1201.