BARRICK REALTY COMPANY; and
Nick Adams, Appellants
(Plaintiffs Below),

v.

Charles R. BOGAN; Hotel Lembke, Incorporated; and Lembke Motor Inn, Incorporated, Appellees (Defendants Below).

No. 3–880A249.

Court of Appeals of Indiana,
Fourth District.

July 13, 1981.
Rehearing Denied Sept. 3, 1981.

Blachly, Tabor, Bozik & Hartman, Glenn
J. Tabor, Thomas F. Macke, David A. Butterfield, Valparaiso, for appellants (plaintiffs below); William J. Wood, John Q. Herrin, Wood, Tuohy, Gleason & Mercer, Indi-

anapolis, for amicus curiae, Indiana Ass'n of Realtors, Inc.

Hoeppner, Wagner & Evans, Gordon A. Etzler, Richard A. Browne, Valparaiso, for appellees.

YOUNG, Presiding Judge.

Barrick Realty Company and Nick Adams, a real estate agent, appeal a negative judgment in an action for a real estate sales commission against Charles R. Bogan, Hotel Lembke, Inc., and Lembke Motor Inn, Inc. They argue the trial court erred in its construction of the term "negotiations" as it relates to what was required to earn a commission and also that the trial court erred by not finding the agreement to have been modified.

■ As they are appealing from a negative judgment, appellants must demonstrate that the judgment of the trial court is contrary to law. We can only reverse when the evidence is without conflict and leads to but one conclusion and the trial court has reached the opposite conclusion. *Umbreit v. Chester B. Stem, Inc.,* (1978) Ind.App., 373 N.E.2d 1116; *House v. Lesow,* (1975) 167 Ind.App. 449, 339 N.E.2d 86.

Adams was a licensed real estate agent working as a representative of the Barrick Realty Company. Bogan represented the hotel owners. On March 4, 1974, Adams had been contacted by Herbert Gehring inquiring about commercial real estate in Valparaiso. On March 9, 1974, Adams and Gehring met at the Barrick office and discussed commercial property in general, after which Adams gave Gehring a tour of the city including a view of the Lembke Hotel. On March 25, Adams called Bogan to see if he might sell the hotel. Bogan responded that he would be willing to discuss its sale. The next day, Adams called Gehring to see if he was still interested in the hotel. He responded that he was. On March 29, 1974, Bogan signed an exclusive real estate agreement with Adams for the sale of the Lembke Hotel in Valparaiso, Indiana. The listing agreement, in printed form was supplied by Adams and provided Adams and Barrick the exclusive listing on the hotel for a two-day period, March 29 and March 30, 1974. The asking price was $275,000. The listing agreement provided for the payment of a 10% commission of the gross sales price and an "extension" clause which reads as follows:

> If said real estate is sold or exchanged within six months after the expiration of the term of this agreement to any person, firm or corporation with whom during the exclusive period of this listing you, your representatives or myself or ourselves had negotiations relative to the purchase of said property for said price stated herein or for a price and upon terms acceptable to me or us, I or we agree to pay you a commission equal to 10% per cent of the gross sale or exchange price thereof, provided, however, that this extension clause shall not be applicable and binding during the term said real estate is relisted with some other licensed Realtor under an exclusive listing contract upon or after the term of this listing agreement.

On March 30, 1974, Adams drove Gehring to the hotel and showed it to him including a tour of the kitchen, dining room, basement, storage area and upstairs rental rooms. Adams gave Gehring information furnished by Bogan concerning the financial operation of the hotel. During the listing period Gehring did not accept Bogan's offer to sell. Neither did he make any counteroffer to buy.

After the listing period but within six (6) months, the hotel was sold by Bogan to Gehring, Gehring's business partner, and Gehring's brother, for $220,000. Adams and Barrick, because they were paid no commission, thereafter filed suit to recover the commission. In order to recover they had to show negotiations occurred during the listing period. The trial court concluded that there were no negotiations relative to the purchase of the hotel for $275,000 or in an amount acceptable to Bogan during the exclusive listing period and, therefore Adams and Barrick were not to receive a commission from a sale that occurred during the extension period.

Appellants argue that the trial court's construction of the agreement was contrary to law. However, based on the uncontroverted facts, we cannot say the evidence led to an inapposite conclusion. Therefore, the trial court's decision is not contrary to law. Appellants recognize that we will not reweigh evidence to make findings alternative to those of the trial court. Yet they ask us to do so by declaring that the trial court so narrowly construed the terms of the listing agreement so as to "frustrate the contractual purpose and negate the parties' intent."

Appellants argue by finding that discussions relative to the sale of the property failed to comprise negotiations, the trial court added a degree of specificity to the contract which the parties did not intend. (Brief 21). They argue that the trial court's findings do not support its construction of the word "negotiations"—that the word "negotiations is vague (Brief 16) and ambiguous. (Brief 19). If so, any ambiguity must be resolved in favor of appellees, not appellants who furnished the form and employed the language used for the agreement. *Frash v. Eisenhower*, (1978) Ind. App., 376 N.E.2d 1201. If the parties to the agreement had intended that a commission was payable upon the sale during the terms of the extension agreement to any buyer to whom the property was shown and to whom they talked (discussions) during the exclusive listing period, they could have easily said so. They did not, therefore, appellants, as drafters, must suffer the consequences of failing to clearly express that intent.

Appellants quote *Platt v. Johr*, (1894) 9 Ind.App. 58, 36 N.E. 294 where the Court of Appeals recognized varying degrees of conduct required of a broker to earn his commission. There is a range of conduct (*e. g.*, from listing, contacting, introduction, showing, discussing, negotiating, contracting, and consummating the sale) for which a commission fee might be earned depending on the agreement between the broker and the seller. The agreement must express the intent of the parties as to such conduct. Where such expression is unclear, the agreement will be interpreted by the court in an attempt to give effect to the intent of the parties. It would appear that under appellant's construction of the conduct required, any prospective purchaser to whom the property is shown and with whom conversations "relative to" the sale take place would come within appellant's intent. If this is the degree of conduct appellant intended, such intent could have been easily expressed in the contract.[1] The parties may make any sort of agreement concerning the conduct required to earn a commission they choose as long as they are competent to contract and the agreement is supported by consideration and not violative of public policy. However, the rights of each are controlled by the contract. *Brown v. Maris*, (1958) 128 Ind.App. 671, 150 N.E.2d 760, 763.

Appellant also argues that the finding of the trial court that discussions did take place but that negotiations did not are inconsistent. This is not necessarily so. Depending upon the construction given the term negotiations, "discussions" may or may not be negotiations. Granted, negotiations are something less than an actual sale. *Delbon v. Brazil*, (1955) 134 Cal.App.2d 461, 285 P.2d 710, 712. Negotiations could reasonably be construed to be more than discussions or the providing of certain information needed to negotiate. Here, the trial court required less than a sale, but more than discussion. It could have reasonably construed the agreement to require discussion whereby parties mutually interested seek to resolve differences with the purpose of arriving at agreement. *See e. g. King v. Dean*, (1968) 15 Ohio App.2d 15, 238 N.E.2d 828, rev'd on other grounds, 19 Ohio St.2d 17, 249 N.E.2d 45. This definition of negotiations serves as a reasonable basis for the trial court to require more than what occurred here, given the broadness of the term and its admittedly ambiguous nature.

---

1. It seems that since appellant had only one prospect, he could have named the prospect and agreed that if the property was sold to the named individual within the period of the extension agreement, the commission would be paid.

Our attention is directed to *Sutton v. Rotn, Wehrly, Heiny, Inc.*, (1981) Ind.App., 418 N.E.2d 229 where a similar extension clause was involved. However, that case provides no guidance to our review of the present case because the evidence of negotiations was "uncontroverted" and the issue of negotiations was resolved summarily. 418 N.E.2d at 233.

While we might not have construed the agreement with the same results as the trial court, the decision of the trial court is not unreasonable. Applying the "accepted rules of construction" as requested by appellant, we cannot say the trial court's decision was contrary to law.[2]

■ The second issue presented is appellant's contention that the trial court erred in ruling that the time element in the listing contract may neither be waived nor modified except by written instrument. IC 32–2–2–1. They argue the time element was modified or waived and included subsequent activities which culminated in the sale of the property entitling the broker to a commission. IC 32–2–2–1.

The trial court was correct. The statutory enumeration of requirements for an enforceable listing agreement do not limit those elements which are material to a contract. The length of listing in a listing agreement may well be material when considering the contract's purpose and intent of the parties. *See e. g. Conley v. Brummit*, (1931) 92 Ind.App. 620, 176 N.E. 880, 882. An extension of the time of the performance of this agreement is a material change which, in the instance of a written contract, must be in writing. *Barney v. Yazoo Delta Land Co.*, (1913) 179 Ind. 337, 101 N.E. 96. Oral modifications are not enforceable. *Frash v. Eisenhower, supra.*

Affirmed.

**2.** Appellant also argues that the interpretation of the trial court increases the possibility of fraud and collusion. Neither fraud or collusion were alleged in this suit. If fraud or collusion occurred, the broker would of course have a cause of action for damages despite whatever contractual provisions appear in the agreement.

CHIPMAN, J., concurs.

MILLER, J., concurs in result.

They argue that such a narrow interpretation is not in the best interests of the public and will have a long-range effect on the real estate trade. The effect will be to have more carefully worded listing agreements which more accurately reflect the parties' intentions, rather than using admittedly ambiguous and vague terminology to express the terms of the agreement.