ESTATE OF F.I. SAEMANN, Appellant
(Defendant Below),

v.

TUCKER REALTY, Appellee
(Plaintiff Below).

No. 25A03–8710–CV–00293.

Court of Appeals of Indiana,
Third District.

Oct. 12, 1988.

Duane G. Huffer, Warsaw, for appellant.

Michael E. Armey, Rasor, Harris, Lemon & Reed, Warsaw, for appellee.

STATON, Judge.

The Estate of F.I. Saemann appeals from the Fulton Circuit Court's grant of summary judgment awarding Tucker Realty broker's commissions in the amount of $12,375.00, interest at the legal rate from the closing date, attorneys fees, and costs of the action. We are asked to address a single issue on appeal:

> Whether the trial court erred in its determination that the grant of an option to purchase during the term of a listing agreement for the sale of real estate entitles a broker to a commission upon exercise of the option after the expiration of the term of the listing agreement?

Reversed.

This controversy stems from a sharp disagreement as to the legal effect of the undisputed, material facts. On April 30, 1977, Tucker Realty entered into an exclusive listing agreement with F.I. Saemann whereby Tucker Realty would receive from Saemann a commission of six percent (6%) of the purchase price of Saemann's City Edge Farm in the event Tucker Realty found a ready, willing, and able purchaser. The listing agreement covered the period from April 30, 1977, to October 30, 1977, and granted Tucker Realty the exclusive right to solicit and procure prospective purchasers for the approximately 202.5 acres located in Kosciusko County, Indiana, known as the "City Edge Farm." The portion of the listing agreement concerning the extension of time of the listing agreement stated in pertinent part:

> If said real estate is sold or exchanged within ___ days after the expiration of the term of this agreement to any person, firm or corporation with whom during the exclusive period of this listing you, your representatives or myself or ourselves had negotiations relative to the purchase of said property for said price stated herein, or for a price and upon terms acceptable to me or us, I or we

agree to pay you a commission equal to *6* per cent of the gross sales or exchange price thereof, provided, however, that this extension clause shall not be applicable and binding during the term said real estate is relisted with some other licensed Realtor under an exclusive listing contract upon or after the term of this listing agreement. This contract is enforceable without relief from valuation and appraisement laws and with attorneys fees.

On June 21, 1977, Tucker Realty delivered to Saemann an offer to purchase the City Edge Farm tendered by a disinterested group of third persons. The terms of the written offer were that the prospective purchasers would purchase the west acreage of City Edge Farm, a total of 120 acres, for $2500.00 per acre immediately, conditioned upon the grant of a five (5) year option to purchase the remaining 82.5 acres for $2500.00 per acre. Saemann accepted this offer in writing on June 21, 1977, which acceptance included the following provision for broker's commission:

> As the owner and seller of the property described herein _____ hereby accept the foregoing Offer to Purchase this *21st.* day of *June, 1977,* and agree to sell in accordance therewith and to pay to *Tucker Realty* licensed broker, the sum of *eighteen thousand* Dollars (*$18,000.00*) commission for his services rendered in this transaction.
>
> /s/ <u>F.I. Saemann</u> (Seller)
> 250 Gilliam Drive
> Warsaw, IN
>
> Witness  /s/ Linda Tucker

On October 12, 1977, pursuant to Saemann's acceptance, purchasers acquired the 120 acres for $300,000.00. Tucker Realty was paid a commission of $18,000.00, or six percent (6%) of the $300,000.00 purchase price, subsequent to closing.

In February of 1982, more than four years after the listing period expired, purchasers timely exercised their option to purchase the east acreage of City Edge Farm, acquiring the remaining 82.5 acres for $206,250.00. Tucker Realty sought to

recover a commission of six percent (6%), or $12,375.00 upon exercise of the option, but Saemann refused to pay and denied owing any money to Tucker Realty for the sale of the east acreage of City Edge Farm.

Tucker Realty initiated this action in the Kosciusko Superior Court on October 17, 1986, seeking a monetary judgment, together with attorney's fees, for commission on the purchase price of real estate sold by Saemann upon exercise of the option obtained during the term of the exclusive listing agreement between Saemann and Tucker Realty. The cause was transferred to the Fulton Circuit Court on December 15, 1986. Both parties thereafter filed motions for summary judgment.

After hearing arguments on the parties' cross-motions for summary judgment, the trial court determined that no issue of material fact existed and subsequently granted summary judgment in favor of Tucker Realty. In a written decision prior to the entry of summary judgment, the trial court stated:

> The law of Indiana is without a specific controlling precedent. Other states have addressed this issue, however; an excellent review of them is available in 32 ALR 3rd 321 "Broker's Rights to Commission from Principal upon Procuring Third Party Taking an Option." The clearly stated rule to apply in these circumstances is there stated as follows:

> The exercise of the option generally will have a significant effect upon the broker's right to a commission, whether or not the broker's employment contract contains a provision expressly referring to option agreements. Thus, where the option is not exercised, the general rule is that a broker employed to find a purchaser is not entitled to a commission from the owner where he merely procures a third party to take an option on the owner's property. But although the broker would not be entitled to a commission under the circumstances presented by such general rule, *his right to a commission accrues, however, when the optionee ex-*

*ercises the option and completes the sale.* (Emphasis Added).

> Nothing appears in Indiana law which is significantly at variance from other state's laws in the area of real estate or contract law. This Court therefore concludes that this general rule would apply in Indiana.

The court thereafter determined that the words "this transaction" as used in the quoted passage of the written acceptance related only to the offer to purchase, not the offer to purchase and the providing of the five-year option, thereby rendering the acceptance silent as to the option or any transaction or closing related with it. Applying the general rule quoted above to interpret that silence, the trial court determined the option exercise and closing to be a separate transaction with rights, duties, and commissions accruing upon its exercise.

This appeal ensued the denial of Saemann's Motion to Correct Errors, with the substitution of the personal representative of the estate of F.I. Saemann in place of Saemann, who died in the interim.

We begin by stating the appropriate standard of review. Summary judgments are properly granted in cases where no issue of material fact exists and which may be determined as a matter of law. Indiana Rules of Procedure, Trial Rule 56. On review of a grant of summary judgment we determine whether an issue of material fact exists and whether the trial court correctly applied the law. *Connell v. American Underwriters, Inc.* (1983), Ind.App., 453 N.E.2d 1028, 1029, *trans. den.* Where, as in this case, an appeal from summary judgment is based solely on a question of law, this court stands in the shoes of the trial court and determines whether the law was correctly applied. *Rowland v. Amoco Oil Company* (1982), Ind.App., 432 N.E.2d 414, 416, *trans. den.* Because both parties agree that no issue of material fact exists, we turn directly to the issue of the correct application of the law.

As noted by the trial court, we are confronted with a previously unsettled area of the law by this appeal: whether a listing

agreement specifically contracting a broker's services to locate a ready, willing, and able purchaser for a described piece of land entitles that broker to a commission when an option to purchase is granted during the term of the listing agreement, but not exercised until after its expiration?

Indiana caselaw requires that a broker prove the following to recover a commission under a written listing agreement for the sale of realty:

1. That an actual sale or transfer of the described realty occurred;

2. That the broker procured a purchaser, who was ready, willing and able to purchase the realty on terms specified in the contract and the seller refuses to complete the transaction; or

3. That a third party entered into a valid executory contract with the vendor for the purchase of the realty through the broker's procurement of such third party.

*Wilson v. Upchurch* (1981), Ind.App., 425 N.E.2d 236, 238. Saemann contends that Tucker Realty met none of these requirements within the terms of the listing agreement, and thus is not entitled to a commission for the sale of the east acreage of City Edge Farm. We agree.

■ The intentions of the parties to a contract are to be determined from the "four corners" of the document. *Shrum v. Dalton* (1982), Ind.App., 442 N.E.2d 366, 369. A broker's right to a commission on a transaction must be determined from the terms of the contract of employment. *Wachtel et al v. Harkless* (1942), 112 Ind. App. 279, 44 N.E.2d 510, 512. In this case, we have a broker who was employed to locate a ready, willing and able buyer during a given six-month period, upon procurement of which he was to receive a six percent commission. Instead, Tucker Realty procured buyers who were ready, willing

and able to buy 120 acres on the condition that they be granted a five-year option to purchase the remaining acres of land described in the listing agreement. Obviously, this was an agreement outside the conditions of the listing agreement. An option to purchase is not a sale or an agreement to sell, but merely a right of election to exercise a privilege. It becomes a contract to sell only upon its exercise. *Coons v. Baird* (1970), 148 Ind.App. 250, 265 N.E.2d 727, 731, *reh. denied.* The listing agreement made no mention of options to purchase or commissions to be paid thereon nor did it provide for extensions of time for performance.

■ Had purchasers executed their option to purchase during the term of the listing agreement, Tucker Realty would undoubtedly have been entitled to a commission, as it ultimately would have secured a ready, willing and able purchaser during the term of the contract. However, the failure of Tucker Realty to provide for an extension of time of the listing agreement or utilize a separate clause in the contract specifically providing for options to purchase proves fatal to its case. Where the sale of realty or procurement of a ready, willing and able purchaser or execution of a valid executory contract occur pursuant to a listing agreement containing a time limitation, *they must be executed during that time period stipulated* for a broker to earn a commission. *Conley v. Brummit* (1931), 92 Ind.App. 620, 176 N.E. 880, 882.[1]

The trial judge in this case discussed the quoted passage of the purchase agreement, focusing on the relationship of the words "this transaction" to the amount agreed to be paid in commission. The trial court admits in its memorandum of summary judgment that the purchase agreement was "silent about the option or any transaction or closing associated with it," and that this

---

1. Even though the extension of time for performance clause of the listing agreement was left blank, its existence would have compelled us to uphold the decision of the trial court had the option to purchase been exercised within a reasonably short time following the expiration of the listing agreement. However, the extension clause itself limits a determination of what is reasonable in this instance to measurement in days. The exercise of the option to purchase more than four years after the listing agreement's expiration is well outside any reasonable spillover period for commission purposes.

silence could be read either way, either to "suggest that it does control or does not control ..." The trial court found that it did not control the subsequent transaction, applying the general rule gleaned from the law of other states which allows the right to commission to accrue upon exercise of an option to purchase regardless of the specific provisions of listing agreements. As previously discussed, the listing agreement controls in this case and, by virtue of its time limitation, precludes recovery of commission by Tucker Realty regardless of the construction given to the words "this transaction" contained in the purchase agreement. Even if the verbiage of the purchase agreement were at issue, the ambiguity would have to be resolved against Tucker Realty as drafters of the contract. *See Frash v. Eisenhower* (1978), 176 Ind. App. 659, 376 N.E.2d 1201, 1204, *trans. den.* (where any ambiguities in the contract occur, the broker must suffer the damage for failing to adequately express the intent of the parties to the contract).

■ Tucker Realty urges that the acceptance of the option to purchase agreement by Saemann ratified their performance and waived the original terms of the brokerage employment. We cannot agree with this construction for two reasons. First, material changes in written contracts must be in writing. An extension of the time for performance under a listing agreement is a material change. *Barrick Realty Co. v. Bogan* (1981), Ind.App., 422 N.E. 2d 1306, 1309. Secondly, we cannot construe the act of an owner in consenting to enter into an option contract as a waiver of the original terms of the contract broker's employment. There is no evidence that Saemann accepted the option contract condition as performance by the broker of his contract to find a ready, willing and able purchaser. Saemann's acceptance of the option to purchase conditions of the purchase agreement may have been the only

means by which to bring about an otherwise desirable sale of part of his property.

■ Indiana law requires that listing agreements be in writing for the specific purpose of preventing disputes over the terms of commission contracts. *Gerardot v. Emenhiser* (1977), 173 Ind.App. 353, 363 N.E.2d 1072, 1075.[2] To this intent, listing agreements are also required to define the essential terms of the relationship between broker and seller. *Id.* Those essential elements for an enforceable listing agreement are not limited by the provisions of IC 32-2-2-1, and have been found to include: an extension of time for performance, *See, Barney et al v. Yazoo Delta Land Co.* (1913), 179 Ind. 337, 101 N.E. 96; and *Barrick Realty Company v. Bogan, supra;* a description of the performance required of the broker, *See, Barrick Realty, supra;* the length of time to be allowed the broker to perform, *See, Conley v. Brummit, supra;* and the amount of commission or fee to be paid to the broker for his performance, *See, Zimmerman et al v. Zehender* (1905), 164 Ind. 466, 73 N.E. 920, 921. We conclude that commissions to be paid upon either the grant or execution of an option to purchase is another such essential element where a broker has failed to provide for an extension of time for performance.

We recognize that some states choose to provide relief for brokers in similar situations by holding that the right to commissions accrues upon execution of the option. Tucker Realty argues this position, contending that to hold otherwise would result in an unreasonably harsh rule of law, and unfairly place the burden upon real estate agents. We think that it will lead to more definitive listing agreements which accurately and completely describe the intentions of the parties.

■ We conclude that specific contractual provisions describing the rights of the parties in the event of a grant of an option

---

**2.** West's AIC 32-2-2-1 provides:
   No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one (1) person of a purchaser for the real estate of another, shall be valid unless the same shall

be in writing, signed by the owner of such real estate or his legally appointed and duly qualified representative: Provided, That any general reference to such real estate sufficient to identify the same shall be deemed to be a sufficient description thereof.

to purchase are required for brokers to collect commissions under given listing agreements, absent a written extension of time for performance or fraud on the part of the principal. We decline to read rights into contracts where they are not specifically provided for. Since Tucker Realty failed to preserve its right to a commission by neglecting to contractually define its rights upon the granting and exercise of an option to purchase under the given listing agreement, and because the time limitation on that listing agreement had expired prior to exercise of the option, we hold that it is not entitled to the commission claimed in this action.[3]

REVERSED.

HOFFMAN and SULLIVAN, JJ., concur.

3. For a similar holding, *see Mulholland v. Ferber* (1984), Minn.App., 359 N.W.2d 321.