Roger & Shirley ASHBAUGH,
Appellants–Defendants,

v.

Kathy HORVATH, Appellee–Plaintiff.

No. 71A03–0604–CV–156.

Court of Appeals of Indiana.

Jan. 17, 2007.

Stephen L. Eslinger, South Bend, IN, Attorney for Appellants.

James A. Masters, Nemeth, Feeney & Masters, P.C., South Bend, IN, Attorney for Appellee.

**OPINION**

MATHIAS, Judge.

Roger and Shirley Ashbaugh ("the Ashbaughs") appeal from the St. Joseph Superior Court's entry of summary judgment, awarding a $15,000 broker's commission to Kathy Horvath ("Horvath") on the sale of an apartment complex. On appeal, the parties raise two issues:

I. Whether the trial court erroneously granted Horvath's motion for summary judgment and erroneously denied the Ashbaughs' motion for summary judgment; and

II. Whether the Ashbaughs have waived their right to contest the trial court's award of attorney's fees to Horvath as the issue was not raised in their Appellants' brief.

Concluding that the Ashbaughs were entitled to summary judgment as a matter of law, we reverse and remand.

**Facts and Procedural History**

On October 2, 2001, the Ashbaughs entered into a one day listing contract for the sale of their apartment complex with Horvath, a realtor.[1] The listing contract provided:

**Broker's Fee:** In the event the Broker finds a purchaser ready, willing and able to buy said real estate, or should said real estate be sold by or through Broker, the Seller or otherwise, during said time for the price upon the terms named herein, or for any other price or terms, or consideration acceptable to the Seller, the Seller agrees to pay the Broker as commission a sum equal to 5% percent of the sum for which said property is

1. The apartment complex was actually owned by a trust that the Ashbaughs had created for estate planning purposes. However, as the

Ashbaughs did not defend the suit based on any entity distinction, the Ashbaughs and the trust can be treated as the same.

sold or exchanged ("Purchase Price") but not less than $25,000.

Appellants' App. p. 53.

The listing contract also contained an extension clause, which provided:

> In the event of any transfer of an interest in said real estate within 365 days after the expiration of this Listing Contract and its extensions, to any person, firm or corporation who had been introduced, interested or shown the property during the exclusive period of this listing by the Seller or by the Broker, [her] Representative, or by a Buyer–Broker, seller agrees to pay a[sic] Broker the commission as provided by this Listing Contract and its extensions.

*Id.*

Horvath introduced the Ashbaughs to Mary D. Moore and her son, Marian H. Moore, Jr. ("the Moores"), who were interested in buying the apartment complex. On October 2, 2001, the Ashbaughs also entered into a contract to sell their apartment complex to the Moores. The Moores agreed to buy the property for the listing price of $550,000; however, they subsequently had problems obtaining financing. The Moores were unable to secure financing by the end of the one-year extension period provided for in the listing contract.

Thereafter, the Ashbaughs and the Moores entered into another agreement extending the contract to purchase until April 3, 2002, a six-month extension. However, the Moores were not able to acquire financing by this deadline either. During this time, Horvath, the Ashbaughs, and the Moores began discussing the possibility of a lease with an option to purchase. On April 3, 2002, the Ashbaughs and Moores entered into a lease agreement with option to purchase the property for $520,000. On the same day, Horvath and the Ashbaughs entered into a contract titled "Addendum to Purchase Agreement

Dated October 2, 2001." This addendum provided:

> Roger L. & Shirley A. Ashbaugh Trust Dated 02–05–97 as seller, agrees to pay Kathy Horvath of Preferred Properties as realtor, the sum of $5,000 within 3 business days of the signing of the lease option for the property.

> Roger L. & Shirley A. Ashbaugh Trust Dated 02–05–97 as seller, agrees to pay Kathy Horvath of Preferred Properties as realtor, the sum of $20,000 on the date of closing of the property in the event that the buyer exercises their [sic] right to purchase as specified in the Lease Option Agreement within the next 12 months.

> In the event that the buyer does not exercise their [sic] right to purchase the property within the next 12 months, Kathy Horvath of Preferred Properties as realtor, accepts the $5,000.00 as payment in full for services rendered and shall have no claim to the $20,000.00 referenced above.

*Id.* at 59. After signing this addendum, the Ashbaughs paid Horvath $5,000.

Horvath continued working with the Moores to help them obtain financing, but she did not continue her contact with the Ashbaughs. In February 2003, the Moores told the Ashbaughs that their loan had fallen through. Roger Ashbaugh told the Moores that if they were not able to obtain financing soon, then they would have to take back possession of the apartment complex as the Moores had not made all of the lease payments during the year. In the same month, Progressive Land Title, a title insurance company, issued a preliminary title insurance commitment to Interbay Funding, a mortgage company through which the Moores, with Horvath's help, were attempting to secure funding to buy the apartment complex. The Ash-

baughs were not notified that a preliminary title insurance commitment had been requested, and the Moores never gave the Ashbaughs a written notice that they were exercising their option to purchase.

The Moores were unable to secure financing for the full $550,000 purchase price before their lease agreement with option to purchase expired on April 4, 2003.[2] The Moores then resumed negotiations directly with the Ashbaughs to purchase the property. Finally, the Moores and the Ashbaughs negotiated a sale under different terms. Under this new agreement, the purchase price was increased to $640,000, but the Ashbaughs were to take back a second mortgage. The property finally closed on May 9, 2003.

When Horvath discovered that a closing was scheduled, Horvath asked the Ashbaughs to pay her the $20,000 commission. When they refused, she offered to reduce the balance of her commission to $15,000. When the Ashbaughs again refused to pay her, Horvath contacted the title insurance company and requested that it hold $15,000 from the sale proceeds to pay her commission. She subsequently filed suit against the Ashbaughs for breach of contract.

The parties filed cross motions for summary judgment. On June 17, 2005, the trial court entered findings of fact and conclusions of law determining almost all of the facts to have been established but denying both parties' summary judgment motions because of one remaining issue: whether the Moores had exercised their option to purchase within the twelve-month period provided for in the addendum to the purchase agreement.

On March 10, 2006, the trial court held an evidentiary hearing on this remaining issue. The trial court subsequently found that the Moores had exercised their option to purchase within twelve months of the addendum and entered summary judgment in favor of Horvath in the amount of $15,000 plus interest. On May 18, 2006, the trial court ordered the Ashbaughs to pay Horvath's attorney's fees. The Ashbaughs now appeal. Additional facts will be provided as necessary.

## Standard of Review

When reviewing a grant or denial of summary judgment, we apply the same standard as the trial court: summary judgment is only appropriate when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C) (2006); *Jacobs v. Hilliard*, 829 N.E.2d 629, 632 (Ind.Ct.App.2005), *trans. denied.* The burden is on the moving party to designate sufficient evidence to eliminate any genuine issues of material fact, and when this requirement is fulfilled, the burden shifts to the nonmoving party to come forth with contrary evidence. *Jacobs*, 829 N.E.2d at 632.

We consider only those facts that were designated to the trial court at the summary judgment stage. *St. Joseph County Police Dept. v. Shumaker*, 812 N.E.2d 1143, 1145 (Ind.Ct.App.2004), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the nonmoving party. *Jacobs*, 829 N.E.2d at 632. The entry of specific findings and conclusions offer insight into the reasons for the trial court's decision and facilitate appellate review, but

---

**2.** During this time, Mary Moore had married Walter Freeman and had become "Mary Freeman." It was actually Walter and Mary Freeman who entered into the final sale contract with the Ashbaughs. However, for simplicity we will continue to refer to them as the Moores.

are not binding on this court. *Troxel Equip. Co. v. Limberlost Bancshares*, 833 N.E.2d 36, 40 (Ind.Ct.App.2005), *trans. denied.*

■ "The fact that the parties made cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct.App. 1997), *trans. denied.*

### I. Broker's Commission

■ The Ashbaughs contend that the trial court's order is erroneous as there was no evidence presented that the Moores had exercised their option to purchase within the twelve-month period provided for in the addendum to the purchase agreement. In essence, the Ashbaughs argue that the addendum was a substituted contract, or a novation, which replaced the terms of the listing contract under which Horvath could be paid.[3] While the trial court concluded in its June 17, 2005 order that the addendum was not a novation, it nevertheless concluded that the terms of the addendum, i.e. whether the Moores exercised their option to purchase within twelve months after the addendum was signed, dictated whether Horvath was entitled to a commission. Therefore, we find it prudent to first clarify whether the addendum acted as a novation to the listing contract.

■ A novation is a new contract made with the intent to extinguish one already in existence. *Rose Acre Farms, Inc. v. Cone*, 492 N.E.2d 61, 68 (Ind.Ct. App.1986), *trans. denied.* Where a novation is found, it acts to extinguish any claims that existed under the original contract. *Id.* at 69. Where a subsequent agreement lacks any language, either express or implied, which indicates an intention to create a novation, relieve contractual liabilities, substitute parties, or extinguish the old contract, we will not conclude that a party to the first contract has waived its right to sue for breach of the first contract. *White Truck Sales of Indianapolis, Inc. v. Shelby Nat'l Bank*, 420 N.E.2d 1266, 1271 (Ind.Ct.App.1981). A novation requires: (1) a valid existing contract; (2) the agreement of all parties to a new contract; (3) a valid new contract; and (4) an extinguishment of the old contract in favor of the new one. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1233 (Ind.1994).

■■ "The contract of novation, like any other contract, must have a consideration to support it." *Morrison v. Kendall*, 6 Ind.App. 212, 215, 33 N.E. 370, 370 (1893). The addendum provided for the Ashbaughs immediately paying Horvath $5000, to which she was not entitled as she had not yet produced a buyer capable of obtaining the necessary financing to buy the apartment complex. In return for this consideration of $5000, the express language of the addendum provides, "[i]n the event that the buyer does not exercise their [sic] right to purchase the property

3. Horvath contends that the Ashbaughs' argument that the addendum was a substitute contract was not raised at the trial court and therefore waived. We note that a "novation" is defined as "[t]he act of substituting for an old obligation a new one that either replaces an existing obligation with a new obligation or replaces an original party with a new par-

ty." Black's Law Dictionary (8th ed.2004). In its June 17, 2005 order, the trial concluded that the facts did not support the Ashbaughs' claim of a "novation" of the listing contract. Appellant's App. p. 8. Therefore, we conclude that the Ashbaughs did raise and preserve this issue.

within the next 12 months, Kathy Horvath of Preferred Properties as realtor, accepts the $5,000 as payment in full for services rendered." Appellant's App. p. 59. This language unequivocally extinguished any obligation the Ashbaughs may have had to pay Horvath's commission under the previous listing contract. The payment to Horvath as well as the potential relinquishment of the Ashbaughs' obligation to her served as adequate consideration to create a new, and binding, contract—a novation. *Rose Acre Farms*, 492 N.E.2d at 69 (holding that extinguishing an old debt constituted adequate consideration for a substituted obligation). Therefore, we conclude that the addendum is the sole reference document for the terms under which Horvath could collect a commission.[4]

■■■■ We next must analyze the terms of the addendum to determine whether the trial court appropriately determined that Horvath was entitled to $15,000 in commission. Indiana law requires that listing contracts be in writing for the specific purpose of preventing disputes over the terms of the commission. *Estate of Saemann v. Tucker Realty*, 529 N.E.2d 126, 130 (Ind.Ct.App.1988) (citation omitted). "The intentions of the parties to a contract are to be determined from the 'four corners' of the document." *Id.* at 129 (citation omitted). A broker's right to a commission on a transaction must be determined from the terms of the contract of employment. *Id.* (citation omitted).

■■■ Our court has determined that an essential element for an enforceable, extended listing agreement is an extension of time for performance. *Id.* at 130 (citing *Barney v. Yazoo Delta Land Co.*, 179 Ind. 337, 101 N.E. 96 (1913)).

> Where a stipulated time is mentioned, it becomes the essence of the contract, which must be performed by the broker within the period mentioned. The sale must be made prior to the expiration of the commission. The broker must produce a person not only able, but willing, to consummate the purchase within the stipulated time, in order to meet his obligations and entitle him to his commission.

*Barney*, 179 Ind. at 345, 101 N.E. at 99 (citation omitted).

■■■ A broker is never entitled to a commission for unsuccessful efforts. *Id.* at 346, 101 N.E. at 99 (quotation omitted). This is true even if the broker introduced the seller and buyer to each other, who would not have otherwise met. *Id.* Part of the broker's risk is that if she is not successful in fulfilling her obligations, "others might be left to some extent to avail themselves of the fruit of [her] labors." *Id.* (internal quotation omitted). The seller does not breach the contract with the broker if, upon the broker's failure to consummate a sale, the seller sells to the first party offering the price asked, even if "the sale is to the very party with whom the

---

**4.** We note that creating a novation to provide for the changed circumstances in this case was appropriate and necessary to extend the period of time during which Horvath could collect a commission. In *Estate of Saemann v. Tucker Realty*, we held that a vendor's grant of an option to purchase the real estate during the term of the listing agreement did not entitle the broker to a commission upon the exercise of the option after the expiration of the listing agreement's term. We concluded that providing for an extension of time for the exercise of the option was an essential element that must be specifically provided for in the contract for a broker to collect a commission on the subsequent sale. 529 N.E.2d 126, 129–31 (Ind.Ct.App.1988). We observed that this requirement would "lead to more definitive listing agreements which accurately and completely describe the intentions of the parties." *Id.* at 130.

broker had been negotiating." *Id.* (internal quotation omitted).

■ "If the broker produces a proposed purchaser, but no sale is consummated until after the broker's commission has expired, when the principal makes the sale in good faith, the broker is not entitled to his commission." *Id.* at 345, 101 N.E. at 99 (citation omitted).[5] This is likewise true when a contract with an option to purchase has expired.

■ In light of this precedent, we conclude that the trial court correctly determined that Horvath could not collect her commission unless the buyers had exercised their option to purchase within twelve months of April 3, 2002, when the addendum was signed. However, upon review of the record, we conclude that as a matter of law the Moores did not exercise their option to purchase within this time frame.

Roger Ashbaugh testified that in February 2003, the Moores called and told him that their loan had fallen through. At this time, Roger told the Moores that if they were not able to obtain financing soon, then they would have to take possession of the apartment complex because the Moores had not made all of the lease payments during the year. Tr. p. 13. No evidence was presented that the Moores ever gave the Ashbaughs a written notice that they were exercising their option to purchase. In fact, no evidence was presented that the Moores attempted to exercise their option to purchase orally by April 4, 2003. Horvath merely presented evidence that a preliminary title insurance commitment was requested on February 11, 2003. The Ashbaughs were never noti-

fied of this request, and in fact Horvath admitted that after the Moores and Ashbaughs entered into the lease agreement, she did not stay in contact with the Ashbaughs. *Id.* at 44.

Evidence that a preliminary title insurance commitment was requested does not demonstrate as a matter of law that the Moores exercised their option to purchase. Michael Wandling ("Wandling"), the Senior Vice President of Archer Land Title, which issued the preliminary title insurance commitment, testified that the ordering of title insurance could not be considered the equivalent of exercising an option to purchase. In fact, Wandling testified that one in three of the orders of a title insurance policy never result in a successful closing. *Id.* at 73. Therefore, we conclude that there was no substantial evidence presented to the trial court that the Moores exercised their option to purchase within the twelve-month period.

■ Even if we assume that the Moores had told the Ashbaughs within the twelve-month time period of their intention to purchase the apartment complex, we are compelled to note that the final sale was not for the terms specified in the lease with option to purchase, as required for Horvath to collect her commission. The lease with option to purchase provided that the Moores agreed to pay $520,000 for the property upon their exercise of the option. Appellant's App. p. 25. When the Moores could not get financing for this amount by the April 2003 deadline, they negotiated with the Ashbaughs to buy the property for $640,000, with the Ashbaughs taking back a second mortgage. Ex. Vol. p. 6.[6]

---

**5.** We note that Horvath has not alleged that the Ashbaughs acted in bad faith or that they were in collusion with the Moores.

**6.** The court reporter improperly labeled the Exhibit Volume as the second volume of the Transcript of Proceedings. We will refer to this volume as the Exhibit Volume.

Therefore, the evidence unquestionably demonstrates that the Moores did not exercise "their right to purchase as specified in the lease option agreement," as was required in the addendum providing the terms for Horvath's collection of an additional $20,000 commission.[7] Appellant's App. p. 27.

As we have already noted, "[t]he intentions of the parties to a contract are to be determined from the 'four corners' of the document." *Estate of Saemann*, 529 N.E.2d at 129 (citation omitted). A broker's right to a commission on a transaction must be determined from the terms of the contract of employment. *Id.* (citation omitted). The plain language of the addendum specified that Horvath was only entitled to an additional $20,000 commission if the Moores exercised "their right to purchase as specified in the lease option agreement within the next 12 months." Appellant's App. p. 27. The Moores were never financially capable of exercising their option to purchase according to the lease agreement with option to purchase. The uncontroverted evidence demonstrates that instead, they had to negotiate directly with the Ashbaughs to agree upon different terms.

We therefore conclude that as a matter of law Horvath did not present evidence to rebut the Ashbaughs' evidence that the Moores failed to exercise their option to purchase as specified in the lease agreement within the twelve-month period. Consequently, Horvath was not entitled to

the additional compensation, as the plain language of the addendum contract specified that Horvath was to accept $5,000 "as payment in full for services rendered" in the event that the Moores did not exercise their option to purchase pursuant to the lease agreement. *Id.* As a result, we conclude that the Ashbaughs are entitled to summary judgment.

## II. Attorney's Fees

 Horvath contends on appeal that because the Ashbaughs failed to challenge the award of attorney's fees in their Appellants' brief, the issue is waived.[8] Courts do not possess an inherent authority to assess or award costs to a prevailing party. *Linder v. Ticor Title Ins. Co. of Cal.*, 647 N.E.2d 37, 40 (Ind.Ct.App.1995). "Although expenses of litigation confront all litigants, generally each party bears his own expenses unless otherwise provided by statute, rule or agreement." *AgMax, Inc. v. Countrymark Co-op., Inc.*, 661 N.E.2d 1259, 1261 (Ind.Ct.App.1996) (citing *Ira v. Brock*, 615 N.E.2d 447, 450 (Ind.Ct.App.1993)). Indiana Code section 34–52–1–1(b) (1999) provides that "[i]n any civil action, the court may award attorney's fees as part of the cost to the prevailing party" if certain conditions are met. As we are reversing the trial court, Horvath is no longer a "prevailing party," and therefore there is no statutory authority to maintain her award of attorney's fees. We therefore vacate the award of attorney's fees.

---

7. Even if Horvath were entitled to her commission under the addendum, the trial court should have awarded her the $20,000 amount provided for in the addendum as opposed to $15,000.

8. In response, the Ashbaughs cite to *Wilson v. Spurr Enterprises, Inc.*, 854 N.E.2d 435 (Table) (Ind.Ct.App.2006), an unpublished memorandum opinion that is referenced in the North Eastern Reporter in a table captioned

"Disposition of Cases by Unpublished Memorandum Decision in the Court of Appeals of Indiana." We advise Appellants' counsel that Indiana Appellate Rule 65(D)(2006) provides that "[u]nless later designated for publication, a not-for-publication memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish *res judicata*, collateral estoppel, or law of the case."

## Conclusion

We conclude that as a matter of law, the evidence shows that the Moores did not exercise their option to purchase upon the terms specified in the lease option agreement within the twelve-month period after the addendum was signed. Therefore, we reverse the trial court's entry of summary judgment on behalf of Horvath and instruct the trial court to enter summary judgment on behalf of the Ashbaughs. As Horvath is no longer a prevailing party, we vacate the trial court's award of her attorney's fees.

Reversed and remanded for proceedings consistent with this opinion.

KIRSCH, C.J., and SHARPNACK, J., concur.